**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | : | |
|---|---|---|
| KENNETH H. WATROUS, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:10-CV-597 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF PRESTON, ET AL., | : | FEBRUARY 16, 2011 |
|    Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [Doc. No. 41]**

**I.   INTRODUCTION**

This case involves a dispute over a parcel of land in eastern Connecticut. On March 23, 2010, the plaintiff and property owner, Kenneth Watrous, filed this suit in state court against defendants Town of Preston (sometimes, "Town"), Town of Preston Inland Wetlands and Watercourses Commission ("Preston IWWC"), Kent D. Borner, John A. Moulson, Robert M. Congdon, and Leonard Johnson,[1] alleging multiple constitutional violations. The defendants removed the case to federal court on April 20, 2010. On June 10, 2010, the court held a hearing on Watrous' Motion for Preliminary Injunction. On June 23, 2010, in a ruling read on the record, the court denied the Motion, finding that Watrous had failed to demonstrate that denial of the preliminary injunction would irreparably harm his interests.

On July 23, 2010, Watrous moved for partial summary judgment. See Mot. for Partial Summ. J., Doc. No. 41. At issue in this Motion is whether the Preston IWWC

---

[1] For the time period relevant to Watrous' Complaint, defendants Borner and Moulson were members of the Town of Preston's Inland Wetlands and Watercourses Commission, defendant Congdon was First Selectman of the Town of Preston, and defendant Leonard Johnson was the Inland Wetlands Enforcement Officer for the Town of Preston.

has jurisdiction to regulate Watrous' property at 8 Pequot Avenue, Preston, Connecticut (the "Property"). Watrous contends that the Connecticut Department of Environmental Protection ("DEP") has exclusive regulatory jurisdiction over the Property by virtue of the Tidal Wetlands Act. The Preston IWWC argues that it has authority to regulate the Property as an area adjacent to a "watercourse" covered by the Inland Wetlands and Watercourses Act.

## II.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.' " Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a

reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008) (stating that a non-moving party must point to more than a mere " 'scintilla' " of evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

### III.  FACTUAL BACKGROUND[2]

Watrous owns a parcel of property at 8 Pequot Avenue in Preston, Connecticut. Pl.'s Amended Local Rule 56(a)(1) Statement, ¶ 1; Def.'s Amended Local Rule 56(a)(2) Statement, ¶ 1. The Property contains a newly constructed house that is set back off a cliff above the rest of the Property. The lower lying portion of the Property is bordered on the southerly side by Poquetanuck Cove. Pl.'s Amended Local Rule 56(a)(1) Statement, ¶ 1; Def.'s Amended Local Rule 56(a)(2) Statement, ¶ 1. Poquetanuck Cove is a tidal estuary of the Thames River, located more than ten miles north of Long Island Sound.

In 2006, Watrous constructed a set of steps from the house down to the portion of the Property adjacent to the Cove. The Preston IWWC issued a cease and desist order to Watrous regarding the steps. In response, Watrous retroactively filed an application for a permit to build the steps. That application was ultimately denied, and the Town filed a notice of its cease and desist order on the land record. On November 27, 2007, the state Department of Environmental Protection, Office of Long Island Sound Programs, also issued a Notice of Violation to Watrous for the steps. After

---

[2] Unless otherwise noted, the following facts are undisputed.

Watrous removed portions of the offending structure, the Department of Environmental Protection formally closed the Notice of Violation on February 19, 2009.  See Joint Supp. Mem.. Doc. No. 71, Ex. C; Joint Supp. Mem., Doc. No. 72, Ex. A.

At various points from 2006 to the present, the Preston IWWC also discussed whether Watrous' newly constructed house was improperly located in violation of the building permit he obtained in 2004.  On October 13, 2006, the Preston IWWC issued a Notice of Violation to Watrous, stating that the residence "appears to be located in conflict with the requirements of the Inland Wetlands and Watercourses Commission regulations."  See Joint Supp. Mem., Doc. No. 71, Ex. A.

While Poquetanuck Cove is located well north of Long Island Sound, the waters of the Cove are still subject to tidal action.  The southern segment of the Property borders on tidal waters.  Watrous has presented indirect evidence that the southerly portion of his property is capable of growing some of the vegetation required to qualify as "wetlands" under the Tidal Wetlands Act, Conn. Gen. Stat. § 22a-29 (hereafter "tidal wetlands).  See Pl.'s Amended Local Rule 56(a)(1) Statement, Ex. C.  However, the defendants do not concede that the southern portion of the Property[3] constitutes tidal wetlands.  For the purposes of this Motion, the court declines to determine whether a genuine factual dispute exists as to whether the Property contains "tidal wetlands," because the court concludes that this determination is not necessary to the disposition of the Motion for Partial Summary Judgment.

The Property does not contain any of the types of soil identified in the definition of wetlands in the Inland Wetlands and Watercourses Act.  Conn. Gen. Stat. §22a-

---

[3] The portion of the Property in question lies at the base of the cliff.

38(15) (hereafter "inland wetlands"). Therefore, the Property does not contain any inland wetlands. Pl.'s Amended Local Rule 56(a)(1) Statement, ¶ 3; Def.'s Amended Local Rule 56(a)(2) Statement, ¶ 3. Moreover, no inland wetlands are located within one hundred feet of the Property. Id.

In summary, the undisputed evidence reveals that: (1) the Property does not contain any inland wetlands and no inland wetlands are located within one hundred feet of the Property; and (2) Poquetanuck Cove is a body of water subject to tidal movement.

## IV. DISCUSSION

Watrous' Motion for Partial Summary Judgment requires the court to determine whether the Preston IWWC has jurisdiction to regulate activity on the Property. The Property itself does not contain any inland wetlands. Whether the Preston IWWC has jurisdiction over the Property instead hinges on the legal characterization of Poquetanuck Cove.

The Inland Wetlands and Watercourses Act provides municipal inland wetlands and watercourses commissions with authority to regulate activity within "watercourses." See Conn. Gen. Stat. § 22a-42(a). Municipal commissions are also permitted to regulate activities in adjacent areas – such as Watrous' property – that might impact a watercourse. See id.; Conn. Gen. Stat. § 22a-42a(f); River Bend Associates, Inc. v. Conservation and Inland Wetlands Comm'n of the Town of Simsbury, 269 Conn. 57, 71-72 (2004); Avalon Bay Communities, Inc. v. Inland Wetlands Comm'n of the Town of Wilton, 266 Conn. 150, 162-63 (2003). The defendants argue that Poquetanuck Cove is a "watercourse" as that term is defined in the Inland Wetlands and Watercourses Act.

Defendants further argue that part of the Property falls within an "upland review area" adjacent to the Cove and is therefore subject to the Preston IWWC's jurisdiction.[4]

Watrous contends that Poquetanuck Cove is actually a "tidal wetland" covered by the Tidal Wetlands Act. The DEP has exclusive regulatory control over "tidal wetlands." Local inland wetlands and watercourses commission are prohibited from regulating areas covered by the Tidal Wetlands Act. See Conn. Gen. Stat. §§ 22a-38(15), -38(16).

To settle the jurisdictional question, the court must determine whether the Inland Wetlands and Watercourses Act grants authority to the Preston IWWC to regulate Watrous' property. The briefing in this case has focused on whether the Tidal Wetlands Act covers Poquetanuck Cove, which would preclude regulation by the Preston IWWC. Below the court addresses the parties' arguments on the scope of the Tidal Wetlands Act. However, the court concludes that determining whether the Tidal Wetlands Act applies to the Cove is unnecessary for the proper disposition of Watrous' Motion for Partial Summary Judgment. Under well-established rules of Connecticut property law, the Cove lies outside the territorial limits of the Town of Preston, and the Preston IWWC therefore lacks jurisdiction over Cove. As a consequence, the Preston IWWC also lacks jurisdiction over any portion of the Property as an "upland review area" affecting the Cove.

---

[4] See Conn. Gen. Stat. § 22a-42a(f) ("If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by such agency related to application for, and approval of, activities to be conducted in wetlands or watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses."); Town of Preston Inland Wetlands & Watercourses Comm'n Regs. § 2.1.8 (2008) (defining "regulated area" as "any wetland or watercourse or other activity within 100 feet thereof").

A. <u>Whether Poquetanuck Cove is Covered by the Tidal Wetlands Act</u>

Watrous argues that the Cove is a "tidal wetland," which would preclude jurisdiction by the Preston IWWC over the Cove.[5] The Tidal Wetlands Act of 1969 defines a tidal wetland as:

> [T]hose areas which border on or lie beneath tidal waters, such as, but not limited to banks, bogs, salt marsh, swamps, meadows, flats, or other low lands subject to tidal action, including those areas now or formerly connected to tidal waters, and whose surface is at or below an elevation of one foot above local extreme high water; and upon which may grow or be capable of growing some, but not necessarily all, of the following . . . [listing certain wetland vegetation].

Conn. Gen. Stat. § 22a-29(2) (emphasis added). The land underneath the water in the Cove certainly qualifies as an "area[] which . . . lie[s] beneath tidal waters," id., but the definition does not indicate that the tidal water itself qualifies as a tidal wetland.

The defendants argue that the Cove is instead a "watercourse" as the term is defined in the Inland Wetlands and Watercourses Act. Under that Act, "watercourses" are:

> [R]ivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bodies of water, natural or artificial, vernal or intermittent, public or private, which are contained within, flow through or border upon this state or any portion thereof, not regulated pursuant to sections 22a-28 to 22a-35, inclusive.

Conn. Gen. Stat. § 22a-38(16). The definition of watercourse specifically excludes any body of water that is regulated pursuant to sections 22a-28 to 22a-35, which are the sections of the Tidal Wetlands Act. As a consequence, if the Cove is a tidal wetland, it

---

[5] Watrous also contends that the Cove is a "tidal watercourse" regulated by the DEP. The Connecticut General Statutes contain no reference to the phrase "tidal watercourse," and "tidal watercourse" is not a defined term in the Tidal Wetlands Act. Characterization of the cove as a "tidal watercourse" therefore lacks any legal significance.

cannot also be a watercourse under the Inland Wetlands and Watercourses Act.[6]

Defendants argue that the Cove cannot constitute a tidal wetland because it is a body of water affected by the tides, not an "area[] which . . . lie[s] beneath tidal waters" as required by the definition of wetlands in the Tidal Wetlands Act. Conn. Gen. Stat. § 22a-29(2). In effect, defendants argue that the Tidal Wetlands Act only covers the land that lies beneath tidal waters, and it only covers that land if it is capable of growing some of the vegetation specified in the statute. "The general principle that statutory terms are to be given meanings according to their commonly approved usage of language is clearly applicable to the [Inland Wetlands and Watercourses Act]." Conservation Comm'n of Town of Simsbury v. Price, 193 Conn. 414, 423, 479 A.2d 187, 193 (1984). Given this interpretive canon, it is difficult to conclude that a body of water can qualify as a tidal wetland.

However, if the Tidal Wetlands Act did not cover tidal bodies of water, the legislature would not have structured the definition of watercourses in the Inland Wetlands and Watercourses Act to exclude "bodies of water . . . not regulated pursuant to [the Tidal Wetlands Act]." Conn. Gen. Stat. § 22a-38(16). Whenever possible, the court is obligated to interpret statutes in a manner that does not render any provision superfluous. See Lopa v. Brinker Intern, Inc., 296 Conn. 426, 433 (2010) (quoting PJM & Associates, LC v. Bridgeport, 292 Conn. 125, 138) ("Because every word and phrase

---

[6] The definition of "wetlands" in the Inland Wetlands and Watercourses Act also excludes any property regulated under the Tidal Wetlands Act. Conn. Gen. Stat. § 22a-38(15). Inland wetlands are defined as "land, including submerged land, not regulated pursuant to sections 22a-28 to 22a-35, inclusive, which consists of any soil types designated as poorly drained, very poorly drained, alluvial, and floodplain by the National Cooperative Soil Society, as may be amended from time to time, of the Natural Resources Conservation Service of the United States Department of Agriculture." Id.

-8-

of a statute is presumed to have meaning[,] a statute must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant.") (internal quotation marks and alterations omitted). This canon of construction weighs in favor of interpreting the Tidal Wetlands Act to cover bodies of water affected by the tides.

      B.    <u>Whether Poquetanuck Cove is Covered by the Inland Wetlands and Watercourses Act</u>

Based on the foregoing analysis, it appears likely that Poquetanuck Cove is a "tidal wetland" covered by the Tidal Wetlands Act. If the Tidal Wetlands Act covered Poquetanuck Cove, the Cove could not be a watercourse within the meaning of the Inland Wetlands and Watercourses Act. However, the court does not need to answer this knotty legal question. Regardless of whether Poquetanuck Cove is a "tidal wetland" under the Tidal Wetlands Act, the Preston IWWC lacks the authority to regulate activity affecting the Cove. Poquetanuck Cove is a body of water affected by the tides, and bodies of water affected by the tides are the property of the State of Connecticut. <u>See infra</u>, at 10. Under the Inland Wetlands and Watercourses Act, a municipal commission lacks the authority to regulate areas beyond the territorial limits of that municipality. Poquetanuck Cove lies outside the territorial limits of the Town of Preston, and the Preston IWWC therefore lacks authority over the Cove.

Under the Inland Wetlands and Watercourses Act, municipal commissions only have authority to regulate activities affecting inland wetlands and watercourses that are located within the territorial limits of that municipality. Connecticut General Statutes section 22a-42(a) provides that:

> To carry out and effectuate the purposes and policies of [the Inland Wetlands and Watercourses Act], it is hereby declared to be the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts.

Id.; see also CMB Capital Appreciation LLC v. Planning and Zoning Comm'n of the Town of North Haven, 124 Conn. App. 379, 395-96, n.9 (2010) (finding that North Haven Inland Wetlands Commission lacked jurisdiction to regulate activities within North Haven for the purpose of protecting wetlands located in the neighboring town of East Haven).

Since at least the nineteenth century, the Connecticut Supreme Court has held that the mean high water mark is the dividing line between the State and municipalities. See State v. Knowles-Lombard Co., 122 Conn. 263, 265 (1936); Simons v. French, 25 Conn. 346, 351-52 (1856).[7] The public, through the State of Connecticut as its representative, owns all land waterside of the mean high water mark. Knowles-Lombard Co., 122 Conn. at 265. As a consequence, bodies of water affected by the tides are necessarily within the State's jurisdiction and outside of any municipality's territorial limits. The defendant concedes that the territorial limit for the Town of Preston is found at the mean high water mark of Poquetanuck Cove along Watrous' property. See Joint Supp. Mem., Doc. No. 71, at 2. In light of the long-established line between State and municipal boundaries, the restriction of the Inland Wetlands and

---

[7] Under Connecticut law, the term "mean high water mark" carries the same meaning as the terms "high water mark" and "ordinary high water mark." See Caminis v. Troy, 112 Conn. App. 546, 548 (2009); Rapoport v. Stamford Zoning Board of Appeals, No. FSTCV054007594S, 2008 WL 5220528, at *10 (Conn. Super. Nov. 13, 2008).

Watercourses Act to areas within a town's territorial limits means that the Act cannot apply to bodies of water affected by the tides.[8]

Because Poquetanuck Cove is a body of water affected by the tides, it sits outside the territorial boundary of the Town of Preston, and it cannot be a "watercourse" within the meaning of the Inland Wetlands and Watercourses Act. Therefore, the Town of Preston's Inland Wetlands and Watercourses Commission lacks authority to regulate any activity within the Cove. The Preston IWWC also lacks authority to regulate any activity on Watrous' property. Although the Property lies within the territorial limits of the Town of Preston, the undisputed facts show that the Property does not contain any inland wetlands or watercourses.[9] The Preston IWWC's sole argument for jurisdiction rested upon the assertion that the Property fell within an "upland review area" adjacent to a watercourse. Because the Cove is not a watercourse within the meaning of the Inland Wetlands and Watercourses Act, the Preston IWWC has no jurisdiction to regulate upland areas for the purpose of protecting the Cove.

---

[8] If the Connecticut General Assembly had intended to extend the Inland Wetlands and Watercourses Act to tidal waterbodies, it could have expressly delegated authority to municipalities to regulate activity outside their territorial limits. For example, Connecticut's Harbor Management Act permits municipalities with harbors along Long Island Sound to establish harbor management commissions with jurisdiction over the "area within the territorial limits of the municipality <u>and below the mean high water</u>." Conn. Gen. Stat. § 22a-113k(a) (emphasis added); <u>see</u> also <u>DiPietro v. Zoning Board of Appeals</u>, 93 Conn. App. 314, 320 (2006) ("The state has manifested its intent to delegate to municipalities located adjacent to Long Island Sound a part of the duty to regulate waterward of the mean high water mark.").

[9] The defendants concede that no inland "wetlands" exist on Watrous' property, which starts at the mean high water line and extends landward. Def.'s Amended Local Rule 56(a)(2) Statement, ¶ 3. The defendants have not argued that the segment of Watrous' property above the mean high water line is a "watercourse" covered under the Inland Wetlands and Watercourses Act.

## V. CONCLUSION

Because the Preston IWWC lacks jurisdiction over the Property, Watrous' Motion for Partial Summary Judgment **[Doc. No. 41]** is **GRANTED.** This action now proceeds to an evaluation of Watrous' claims of violations of substantive due process, procedural due process, conspiracy to violate 42 U.S.C. § 1983, and violation of Connecticut's Antitrust Act. The court has issued a separate order scheduling a status conference to address the remaining issues in the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 16th day of February, 2011.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge