UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH H. WATROUS, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-597 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF PRESTON, ET AL., | : | MAY 2, 2011 |
| Defendants. | : | |

**RULING RE: MOTION TO DISMISS [Doc. No. 80]**

**I.    INTRODUCTION**

This case involves a dispute over a parcel of land in eastern Connecticut.  On March 23, 2010, the plaintiff and property owner, Kenneth Watrous, filed this suit in state court against defendants Town of Preston (sometimes, "Town"), Town of Preston Inland Wetlands and Watercourses Commission ("IWWC"), Kent D. Borner, John A. Moulson, Robert M. Congdon, and Leonard Johnson,[1] alleging multiple constitutional violations.  The defendants removed the case to federal court on April 20, 2010.  On June 10, 2010, the court held a hearing on Watrous's Motion for Preliminary Injunction.  On June 23, 2010, in a ruling read on the record, the court denied the Motion, finding that Watrous had failed to demonstrate that denial of the preliminary injunction would irreparably harm his interests.

---

[1] For the time period relevant to Watrous' Complaint, defendants Borner and Moulson were members of the Town of Preston's Inland Wetlands and Watercourses Commission, defendant Congdon was First Selectman of the Town of Preston, and defendant Leonard Johnson was the Inland Wetlands Enforcement Officer for the Town of Preston.

On February 16, 2011, the court granted Watrous's Motion for Partial Summary Judgment. See Doc. No. 74. The court held that the IWWC lacks jurisdiction over the property owned by Watrous that is the subject of this litigation. "Under well-established rules of Connecticut property law," the body of water adjacent to the Watrous's property "lies outside the territorial limits of the Town of Preston, and the Preston IWWC therefore lacks jurisdiction over . . . any portion of the Property as an 'upland review area' affecting" that body of water. Id. at 6, 10.

On February 26, 2011, defendants filed a Motion to Dismiss Count One and Count Four of the Complaint. See Doc. No. 80. For the reasons that follow, the court terminates as moot in part and denies in part the defendants' Motion to Dismiss.

## II.   STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## III.    FACTUAL BACKGROUND[2]

Watrous is the owner of a parcel of land known as 8 Pequot Street, located in the Town of Preston, Connecticut ("the Property").  Compl. at ¶ 1.  Watrous purchased the Property on February 19, 2004 with the intention of removing an old residential structure on the Property and replacing it with a new residence. Compl. at ¶ 10.  Toward that end, Watrous applied for and received a variance from the Preston Zoning Board of Appeals. Compl. at ¶¶ 11, 12.

Watrous also applied to the Town of Preston Building Department for a building permit before constructing the new residence. Compl. at ¶ 13.  As a condition of obtaining the building permit, Defendant Leonard Johnson, the Town of Preston's Inland Wetlands Enforcement officer, directed Watrous to submit an application to the IWWC for a permit, on the premise that Watrous was seeking to conduct a regulated activity within 100 feet of Poquetanuck Cove, which Watrous was told required a permit from the IWWC.  Compl. at ¶ 14.  Watrous submitted the requested application to the IWWC on October 6, 2004.  Compl. at ¶ 16

On November 16, 2004, the IWWC approved Watrous's application, with the condition that the new house would not be any closer to Poquetanuck Cove than the existing structure. Compl. at ¶ 17.  Subsequent to receiving the IWWC permit, Watrous obtained the building permit, demolished the existing residence, removed the debris, and constructed the new residence.  Compl. at ¶¶ 17, 18.  In the course of the construction, the Town of Preston Building Department conducted inspections that

---

[2] Taking the factual allegations in the Complaint as true, and drawing all reasonable inferences in favor of Watrous, the court assumes the following facts for the purposes of the Motion to Dismiss.

-4-

verified the footings and foundation were built in the exact location as depicted on the engineered site plan submitted to the Preston Zoning Board of Appeals and the IWWC. Compl. at ¶¶ 18, 19. On February 1, 2006 the Preston Zoning officer issued a certificate to Watrous which stated: "This is to certify that the use 'New Dwelling' requested by the Owner/Applicant, Kenneth H. Watrous at 8 [Pequot] Street, Preston, Connecticut under Zoning Permit 2179 conforms to the Approved Site Plan as required by the Preston Zoning Regulations." Compl. at ¶ 20. On February 15, 2006 the Town of Preston issued a Certificate of Occupancy to the Plaintiff. Compl. at ¶ 21.

After Watrous received his certificate of occupancy, Watrous's neighbor, David Bobbin, submitted a litany of complaints to the Town of Preston Selectman, as well as to Zoning, Building, and Inland Wetlands enforcement agents, alleging that Watrous violated building, zoning, and wetlands laws. Compl. at ¶ 23. Bobbin alleged that Watrous built a stairway to Poquetanuck Cove without an Inland Wetlands permit and sited his new residence closer to Poquetanuck Cove than the original residence. Compl. at ¶¶ 23, 26, 27. Bobbin pursued these complaints with the purpose of acquiring Plaintiff's portion of an abandoned road which borders their properties. Compl. at ¶¶ 24, 25, 29.

On June 22, 2006, Johnson mailed a Notice of Violation to Watrous advising Watrous that the construction of the stairway violated the Preston Inland Wetlands and Watercourses Regulations. Compl. at ¶ 28. On July 11, 2006, Johnson served a Cease and Desist order on Watrous, directing Watrous to appear before the IWWC. Compl. at ¶¶ 29, 30. On July 18, 2006, Watrous appeared before the IWWC and was advised to file an application with the IWWC for the stairway. Compl. at ¶ 31. On July

20, 2006, Watrous filed the requested application with the IWWC for a permit for the stairway. Compl. at ¶ 32.

On July 26, 2006, Watrous's attorney sent a letter to defendant Robert M. Congdon, First Selectman of the Town of Preston, concerning Bobbin's complaints and the willingness of Johnson to accept those complaints without further inquiry. In this letter, counsel warned Congdon that Watrous would hold the Town of Preston responsible for any actions taken by the town in support of Bobbin's efforts to impair Watrous's title. Compl. at ¶ 33.

Watrous appeared again before the IWWC at its meeting on August 15, 2006, and, through his attorney, Watrous asserted that the area in question, Poquetanuck Cove, was a tidal wetland that was not subject to the jurisdiction of the IWWC, but rather was subject to the jurisdiction of the Connecticut Department of Environmental Protection. Defendant Kent D. Borner, Chairman of the IWWC, rejected this conclusion. Compl. at ¶ 34.

Watrous next appeared before the IWWC on September 19, 2006. At this meeting, Borner told Watrous that IWWC regulations prevented the IWWC from acting on Watrous's application for the stairway if another violation existed on the Property. Johnson stated that there was a possible violation regarding the house. The IWWC voted to schedule Watrous's application for the stairway for a public hearing in October, subject to cancelation if a second violation was verified. Compl. at ¶ 35. No IWWC regulation prohibits action by the IWWC on an application due to the existence of other violations on the subject property. Compl. at ¶ 36.

On October 13, 2006, prior to the public hearing, Johnson sent a Notice of Violation by certified mail to Watrous. The Notice stated as follows: "At the direction of Mr. Kent D. Borner, Preston Inland Wetlands and Watercourses Commission (IWWC) Chairman, you are being issued this Notice of Violation. During a visual inspection done by Mr. Robert M. Congdon, Preston First Selectman, it was determined that your house at 8 Pequot Street appears to be located in conflict with the requirements of the Inland Wetlands and Watercourses regulations. This matter will be further addressed at the next scheduled IWWC meeting." Compl. at ¶ 37.

On October 17, 2006, the IWWC canceled the public hearing on Watrous's stairway application, on the grounds that the location of the new residence purportedly created a second violation. Compl. at ¶ 40. The IWWC discussed how to ensure that Watrous's new house could not be sold. Id. At the same meeting, Bobbin appeared before the IWWC to respond to allegations that he had been re-grading, filling, and expanding his land into Poquetanuck Cove. Compl. at ¶ 41. Johnson did not issue a Notice of Violation or Cease and Desist to Bobbin, nor did Johnson report these activities to the DEP, as he had for Watrous's stairway construction. Id. Bobbin was instead directed to file an application with the IWWC. Id.

Between November 13, 2006 and July 10, 2007, Johnson sent five Cease and Desist Orders to Watrous based on Congdon's visual inspection that formed the basis for the October 13, 2006 Notice of Violation. Compl. at ¶¶ 42, 46, 48, 50, 52. At the IWWC's November 21, 2006 meeting, Watrous appeared with counsel. Compl. at ¶ 43. At this meeting, Watrous's attorney explained that Congdon's visual inspection could not have detected a violation, because the original structure on the property had been

completely removed such that Congdon had no point of reference for determining whether the new residence was closer to the Cove. Compl. at ¶ 43. Watrous's attorney noted that building officials for the Town of Preston had inspected the location of the footings and foundation and certified that the new house was constructed in accordance with the approved site plan. Id. Watrous's attorney also reiterated that the IWWC did not have jurisdiction over the Property, because the Poquetanuck Cove was a tidal wetland, not an inland wetland. Id. The IWWC rejected Watrous's arguments, and Borner advised Watrous that the town attorney would proceed with a legal action against him. Id.

At its next meeting, the IWWC rejected Watrous's application for construction of the stairway due to the outstanding violation regarding the location of the house. Compl. at ¶ 44. At the same meeting, the IWWC approved the application of Bobbin for work within the wetland area of Poquetanuck Cove. Id. On September 10, 2007, Congdon appeared before the Preston Zoning Board of Appeals with Bobbin and discussed Bobbin's allegations against Watrous. Compl. at ¶ 55. Congdon asked if there was anything prohibiting the town from recording a cease and desist order with the Town Clerk so that a title searcher would know that the deed is tainted. Id. The town attorney indicated that he did not think so, but he would confirm that information. Id. On September 12, 2007, a Notice of Cease and Desist Order, signed by Borner, was recorded in the Preston Land Records for Watrous's property located at 8 Pequot Street. Compl. at ¶ 56.

On March 5, 2009, Johnson received an e-mail from DeAva Lambert, the Environmental Analyst within the Office of Long Island Sound Programs of the DEP,

advising him that Poquetanuck Cove and its wetlands are regulated under the Tidal Wetlands Act. Compl. at ¶ 59. This e-mail was also received by the IWWC as noted in its minutes of March 17, 2009. Compl. at ¶ 60. Although Lambert's e-mail advised the recipients that Poquetanuck Cove and its wetlands were regulated under the Tidal Wetlands Act and not the Inland Wetlands and Watercourses Act, the defendants did not take any action to rescind the Notices of Violation and Cease and Desist Orders entered against Watrous and recorded in the Land Records of the Town of Preston. Compl. at ¶ 61.

Watrous later commissioned and submitted to the IWWC an A-2 survey of the property which showed the locations of the new house and the original house, in order to prove that the new house was not closer to the Cove than the original structure. Compl. at ¶¶ 62-65. Plaintiff met with the IWWC on June 16, 2009, to review the survey. Compl. at ¶ 62. Borner told Watrous that the A-2 survey may confirm the location of the existing house. Compl. at ¶ 66. However, the IWWC believed that the house was not built in the location specified in the approved site plan. Id. Borner asked if Watrous would agree to have an engineer hired by the Town of Preston confirm that the existing house location is the same as the approved location, and Watrous agreed. Id. The IWWC engaged CLA Engineers, Inc., which produced a report finding that the new house was built in the location indicated on the approved site plan. Compl. at ¶¶ 67, 68. This report did not address whether the new house was located closer to Poquetanuck Cove than the original structure, which was the sole condition specified by IWWC when it approved Watrous's application. Compl. at ¶ 68.

On October 20, 2009, the IWWC met in executive session with defendant John A. Moulson, who had been chairman of the IWWC throughout the proceedings involving Watrous. Compl. at ¶ 71. Prior to the meeting, Watrous sent a letter to the town attorney and to Moulson, together with copies for the other members of the IWWC. Id. The letter reviewed the history of the case, summarized the report of CLA Engineers, Inc., and attached a copy of November 16, 2004 minutes of the IWWC, which stipulated the agreement between Watrous and the IWWC that the new house would not be closer to Poquetanuck Cove than the original house. Id. Given that there was no evidence that the new house was closer to Poquetanuck Cove than the original house, Watrous requested that the Cease and Desist order be withdrawn. Id. In response, the IWWC voted to recommend to the Board of Selectman to authorize and fund a lawsuit against Watrous. Id.

To date, the Notice of Cease and Desist remains on Watrous's land record, and Watrous is unable to market or sell the Property. Compl. at ¶ 72.

## IV. DISCUSSION

The defendants' seek to dismiss the following claims: (1) Watrous's federal constitutional substantive due process claim (Count One); (2) Watrous's state constitutional substantive due process claim (Count One); and (3) Watrous's Connecticut Antirust Act claim (Count Four). See Doc. 80, at 1-2. In response to the Motion to Dismiss, Watrous withdrew his state substantive due process claim (part of Count One) and his Connecticut Antitrust Act claim (Count Four). Second Mem. in Opp. (Doc. No. 84). The only claim still at issue in this Motion, therefore, is Watrous' federal substantive due process claim.

To prevail on a cause of action for violation of federal substantive due process in the land use context, a plaintiff must show that (1) he or she "had a valid property interest," and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007); see Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 503 (2d Cir. 2001). For the purposes of this Motion, the defendants concede that Watrous possessed a valid property interest, as set forth in his Complaint. Mem. in Support of Mot. to Dismiss (Doc. No. 81), at 6-7, n. 2. Therefore, the sole question for the court in this Motion is whether Watrous pleads sufficient facts to support the second prong of a cause of action for violation of the federal constitutional right to substantive due process.

### A. The "Arbitrary or Irrational" Standard

To establish a substantive due process violation in the context of a land use decision, a plaintiff "must show that the [defendant's] alleged acts against their land were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" Ferran v. Town of Nassau, 471 F.3d 363, 369-70 (2d Cir. 2006) (citation omitted). Violation of the substantive standards of the Due Process Clause requires "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 259 (2d Cir. 1999).

In determining whether Watrous has stated a claim for violation of federal substantive due process, the court is mindful that the Fourteenth Amendment is not a "font of tort law." Pena v. Deprisco, 432 F.3d 98, 112 (2d Cir. 2005) (quoting Lewis v.

City of Sacramento, 523 U.S. 833, 848 (1998)). "It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." Pena, 432 F.3d at 112. Moreover, federal courts "should not become zoning boards of appeal to review nonconstitutional land use determinations by the Circuit's many local legislative and administrative agencies." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir.1995)); see Harlen Associates, 273 F.3d at 505.

"[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" and therefore support a substantive due process claim. Lewis, 523 U.S. at 849. Conduct which exceeds the authority vested in a government body or official may also support a substantive due process violation. "[T]he touchstone of due process is protection of the individual against arbitrary action of government." Id. at 845 (citation omitted). If a government body or official "did not have authority for the actions it took regarding" a plaintiff's property, such "actions were ultra vires and, as a result sufficiently arbitrary to amount to a substantive due process violation." Cine SK8, Inc., 507 F.3d at 789.

### B. Watrous's Allegations

Watrous's allegations broadly fall into three categories. Properly understood, Watrous's Complaint first alleges that the defendants' intentionally sought to deprive Watrous of a valid property interest. Second, Watrous alleges that the defendants' actions lacked any legitimate or rational basis. Third, Watrous alleges that all of the

defendants' actions relative to the Property constituted a gross abuse of governmental authority, because the IWWC never possessed jurisdiction over the Property.

### 1. Intentional Conduct

With regard to the first set of allegations, Watrous alleges that his neighbor, David Bobbin, engaged in a campaign to harass Watrous through complaints to the IWWC, with the ultimate aim of acquiring Watrous's section of an abandoned road that borders their properties. Watrous states that Bobbin was given favorable treatment by the IWWC for conduct similar to that taken by Watrous. A reasonable inference from this differential treatment is that the defendants were biased against Watrous and wrongfully influenced by Bobbin. Watrous also pleads that the Town First Selectman, Congdon, was an ally of Bobbin who appeared before the IWWC in support of Bobbin and in opposition to Watrous.

In addition, Watrous alleges that Congdon conducted a visual inspection of the Property from which he purportedly concluded that the new residence was located closer to the Cove than the prior structure. Because no trace of the prior residence existed, Congdon's visual inspection could not have had a reasonable basis and could have been motivated by bias. Watrous further contends that the IWWC denied him a hearing on his application for a stairway on the basis of a non-existent regulation that the IWWC claimed prohibited action on application if other violations existed on a subject property. A reasonable inference from this set of facts is that the IWWC and the individual defendants acted intentionally to deprive Watrous of a valid property interest. Watrous has plead facts that support the conclusion that the defendants "intended to injure [Watrous] in some way unjustifiable by any government interest."

Lewis, 523 U.S. at 849. Intentional conduct of this sort is "the sort of official action most likely to rise to the conscience-shocking level" and therefore support a substantive due process claim." Id.

### 2. Action Without Rational Basis

Watrous also pleads facts that support a conclusion that the IWWC's actions were "arbitrary or irrational." Watrous alleges that the (1) Town of Preston's zoning officer inspected the new residence and issued a certificate that the residence was located in accordance with the site plan; (2) that Watrous commissioned an A-2 survey which confirmed that the house was properly located; and (3) that the IWWC commissioned a report by CLA Engineers, Inc. which also concluded that the house was constructed in the location specified in the site plan. Accepting the facts stated in the Complaint as true, the defendants' only basis for concluding that the new residence was improperly situated was a visual inspection by Congdon, who lacks any expertise in surveying, and who viewed the Property after all remnants of the prior residence had been removed.

Taken together, these facts support the conclusion that the defendants' lacked any rational basis for issuing a Notice of Violation regarding the location of the house and for filing a Cease and Desist Order on the land records. The failure to reach "the right decision on the merits" of a zoning application "does not raise a federal question." Harlen Associates, 273 F.3d at 505. However, "a zoning board's action can be considered arbitrary or irrational . . . where it has no legitimate basis." Id. Embracing the facts in the Complaint as true, the defendants' actions were not "merely incorrect or

ill-advised," Ferran, 471 F.3d at 369-70, but were "so outrageously arbitrary as to constitute a gross abuse of governmental authority," Natale, 170 F.3d at 259.

### 3. Action Without Legal Authority

Finally, Watrous alleges that the defendants abused their authority by issuing Notices of Violation, delivering Cease and Desist Orders, and impairing Watrous's title without possessing any jurisdiction over the Property. Watrous further alleges that he apprised the defendants on multiple occasions that they lacked jurisdiction over the Property, but the defendants nevertheless persisted in their course of conduct. On February 16, 2011, this court ruled on Watrous's Motion for Partial Summary Judgment, holding that the IWWC lacked jurisdiction over the Property for all times relevant to this Complaint. Doc. No. 74.

Coercive government action, taken without legal authority, may constitute a substantive due process violation. In Brady v. Town of Colchester, 863 F.3d 205 (2d Cir. 1988), the Second Circuit reversed a summary judgment ruling in favor of the defendants on a substantive due process claim in a zoning dispute. The court held that there was a genuine dispute of fact over whether the Town of Colchester's zoning board had improperly determined that a given parcel of property had changed from residential to commercial use. Id. at 215. If no such "change in use" had occurred, then the defendants in Brady "had no authority under state law to revoke appellants' building permit, to demand [the plaintiff] apply for zoning permits and certificates of occupancy, and to subject him to the overall approval process." Id. at 215-16. Thus, "a trier of fact could conclude that there was no 'rational basis' for the [defendants'] actions, and that, as a result, the [defendants] violated appellants' right to substantive due process." Id.;

-15-

see Southview Associates, Ltd. v. Bongartz, 980 F.2d 84, 104 (2d Cir. 1992) ("when our Court, as well as other Courts of Appeal have found an allegation of a deprivation of substantive due process sufficient to warrant an adverse judgment against a governmental body, the plaintiffs have pleaded or presented evidence indicating that the body acted beyond its authority, without justification, or committed other egregious misconduct"). Here, Watrous has properly alleged that the defendants lacked jurisdiction over the Property and therefore had no authority to demand permit applications, file Notices of Violation, issue Cease and Desist Orders, or file Cease and Desist Orders on the land record. Such allegations are certainly sufficient to state a claim for violation of substantive due process. For example, in Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007), the Town Board for Henrietta, New York amended a special use permit held by a local property owner, despite the high probability that the Board lacked the authority to amend such permits. 507 F.3d at 789. The Second Circuit Court of Appeals concluded that "if the Town Board did not have authority for the actions it took regarding [the property owner's] permit – as it appears it did not – the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." Id.

Before the defendants filed this Motion to Dismiss, this court had already ruled on a Motion for Preliminary Injunction and a Motion for Partial Summary Judgment. In the latter motion, the court held that, in light of the undisputed facts about the nature of the Property and the adjacent Poquetanuck Cove, the defendants lacked jurisdiction over the Property. Under Cine SK8, actions outside the scope of a defendant's authority are "sufficiently arbitrary to amount to a substantive due process violation," id., and any

adverse actions taken by the defendants against the Property owner may constitute a per se violation of substantive due process.

## V. CONCLUSION

For the foregoing reasons, the Motion to Dismiss [**Doc. No. 80**] is **TERMINATED AS MOOT IN PART** and **DENIED IN PART**. The Motion is terminated as moot as to Connecticut Antitrust Act claim that constitutes Count Four of the Complaint and as to the state substantive due process claim contained in Count One of the Complaint. The Motion is denied as to the federal substantive due process claim contained in Count One of the Complaint.

Pursuant to Rule 12(a)(4), the defendants have fourteen days to file their Answer. Failure to file an Answer by **MAY 17, 2011**, may result in the entry of default judgment under Rule 55.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 2nd day of May, 2011.

                                                    /s/ Janet C. Hall
                                                    Janet C. Hall
                                                    United States District Judge