## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH H. WATROUS, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:10-CV-597 (JCH) |
| v. | : | |
| | : | |
| TOWN OF PRESTON, ET AL., | : | SEPTEMBER 29, 2012 |
| Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 116)
AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 117)**

## I.    INTRODUCTION

This case involves a dispute over a parcel of land in eastern Connecticut.  On

March 23, 2010, the plaintiff and property owner, Kenneth Watrous, filed this suit in

state court against defendants Town of Preston (sometimes, "Town") and Town of

Preston Inland Wetlands and Watercourses Commission ("IWWC"), and Kent D. Borner,

John A. Moulson, Robert M. Congdon, and Leonard Johnson (together, "Individual

Defendants"), alleging multiple and federal constitutional violations, conspiracy, and

violation of the Connecticut Antitrust Act.  For the time period relevant to Mr. Watrous'

Complaint, Mr. Borner and Mr. Moulson were members of the IWWC, Mr. Congdon was

the Town's First Selectman, and Mr. Johnson was the Town's Inland Wetlands

Enforcement Officer.

The defendants removed the case to federal court on April 20, 2010.  On June

10, 2010, the court held a hearing on Mr. Watrous' Motion for Preliminary Injunction.

On June 23, 2010, in a Ruling read on the record, the court denied the Motion, finding

that Mr. Watrous had failed to demonstrate that denial of the preliminary injunction

would irreparably harm his interests (Doc. No. 39).

On February 16, 2011, the court granted Mr. Watrous' Motion for Partial Summary Judgment ("Pl.'s Mot. Partial Summ. J.") (Doc. No. 74). The court held that the IWWC lacks jurisdiction over the property owned by Mr. Watrous that is the subject of this litigation. "Under well-established rules of Connecticut property law," the body of water adjacent to Mr. Watrous' property "lies outside the territorial limits of the Town of Preston, and the Preston IWWC therefore lacks jurisdiction over . . . any portion of the Property as an 'upland review area' affecting" that body of water. Id. at 6, 10.

On February 26, 2011, defendants filed a Motion to Dismiss Count One and Count Four of the Complaint (Doc. No. 80). Mr. Watrous subsequently withdrew his state substantive due process claims (part of Count One) and his antitrust claim (Count Four). The court issued a ruling denying the Motion to Dismiss as to Mr. Watrous' federal substantive due process claim (Doc. No. 90).

On December 13, 2011, the Individual Defendants filed a Motion for Summary Judgment as to all claims against them (Doc. No. 116).[1] That same day, the Town and the IWWC filed a separate Motion for Summary Judgment (Doc. No. 117) asserting that

---

[1] The Individual Defendants do not, however, appear to address Mr. Watrous' procedural due process claims under the Connecticut state constitution (part of Count Two) or Mr. Watrous' claims, to the extent that they are made, under Article I, § 11 of the Connecticut state constitution, which prohibits the taking of personal property for public use without just compensation. Conn. Const. art. I, § 11. Defendants acknowledged the possible existence of Mr. Watrous' Connecticut takings claim in its Memorandum of Law in Support of Defendants' Motion to Dismiss, but declined to address the issue. See Memorandum in Support of Defendants' Motion to Dismiss (Doc. No. 81) at 15, n.6 ("To the extent that the Plaintiff is attempting to allege a [sic] inverse condemnation claim under the Connecticut Constitution, the instant motion to dismiss is not directed to such a claim."). The court acknowledges some confusion as to Mr. Watrous' intent regarding this claim, as it is asserted in the context of his federal and state substantive due process claims.

As the instant Motions for Summary Judgment make no mention of either the state procedural due process issue or the state constitutional takings issue, the court will not address them here as they have not been explicitly abandoned by Mr. Watrous.

the IWWC was not a proper party defendant to the case and that claims for liability against the Town must fail as a matter of law.[2]

## II.    STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Natn'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).   "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d

---

[2] In response to the Town and the IWWC's Motion for Summary Judgment, Mr. Watrous withdrew his conspiracy claim under 42 U.S.C. § 1983 against the Town (part of Count Three).  See Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment of the Town of Preston and the IWWC ("Pl.'s Memo./Town and IWWC") (Doc. No. 125) at 18.

Cir. 2007)); see also Havey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir.

2008) (stating that a non-moving party must point to more than a mere "'scintilla'" of

evidence in order to defeat a motion for summary judgment) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986)).

## III.   FACTUAL BACKGROUND

Mr. Watrous owns a parcel of property at 8 Pequot Street in the Town of Preston,

Connecticut (the "Property").  See Defs.' Local Rule 56(a)1 Statement ("Defs.' 56(a)1")

(Doc. No. 116-1, 117-1), ¶ 1; Pl.'s Local Rule 56(a)2 Statement ("Pl.'s 56(a)2") (Doc.

No. 124-1, 125-2), ¶1.  Mr. Watrous purchased the property on February 19, 2004, and

thereafter took steps to remove an old residential structure on the property and replace

it with a new residence.  See Defs.' 56(a)1, ¶ 8; Pl.'s 56(a)2, ¶ 8.  Mr. Watrous applied

for and received a variance to do so from the Town Zoning Board of Appeals.  See

Defs.' 56(a)1, ¶ 10; Pl.'s 56(a)2, ¶10.

Watrous also applied to the Town Building Department for a building permit

before constructing the new residence.  See Defs.' 56(a)1, ¶ 11; Pl.'s 56(a)2, ¶11.  As a

condition of obtaining the building permit, Mr. Johnson, the Town's Inland Wetlands

Enforcement Officer, directed Mr. Watrous to submit an application to the IWWC for a

permit, on the premise that Mr. Watrous was seeking to conduct a regulated activity.

See Defs.' 56(a)1, ¶ 13; Pl.'s 56(a)2, ¶ 13.  Mr. Watrous submitted this application on

October 6, 2004, and the application was approved on November 16, 2004.  See Defs.'

56(a)1, ¶ 14; Pl.'s 56(a)2, ¶ 14.  Mr. Watrous obtained a building permit from the Town

Building Department on December 23, 2004.  See Defs.' 56(a)1, ¶ 15; Pl.'s 56(a)2, ¶ 15.

After receiving these two permits, Mr. Watrous demolished the existing residence, removed the debris, and constructed a new residence.  See Defs.' 56(a)1, ¶ 16; Pl.'s 56(a)2, ¶ 16.  In the course of the construction, the Town Building Department conducted inspections, at Mr. Watrous' request, that verified that the footings and foundation of the new residence were built in the exact location as depicted on the site plan submitted to the Town Zoning Board of Appeals and the IWWC.  See Defs.' 56(a)1, ¶ 15, 16; Pl.'s 56(a)2, ¶ 15, 16.  On February 1, 2006, the Town Zoning Officer issued a certificate to Mr. Watrous stating that the new residence conformed to the site plan as required by the Town zoning regulations.  See Defs.' 56(a)1, ¶ 18; Pl.'s 56(a)2, ¶ 18.  On February 15, 2006, the Town issued a Certificate of Occupancy to Mr. Watrous.  See Defs.' 56(a)1, ¶ 19; Pl.'s 56(a)2, ¶ 19.

The IWWC held a meeting on June 20, 2006 and, at that meeting, the IWWC was informed of an alleged violation on the Property in the form of a stairwell running from the house to the edge of the Property and down into the Poquetanuck Cove.  See Defs.' 56(a)1, ¶ 20; Pl.'s 56(a)2, ¶ 20.

Mr. Watrous claims that the IWWC was informed of the violation by Mr. Watrous' neighbor, David Bobbin, who sought to acquire a portion of an abandoned road that belonged to Mr. Watrous and bordered Mr. Bobbin's property.  See Pl.'s 56(a)2 at 9.  Mr. Watrous alleges that Mr. Bobbin told the IWWC that Watrous built the stairway without a proper permit from the IWWC and that Mr. Watrous' new residence was built closer to Poquetanuck Cove than the previous residence.  Id.

On June 23, 2006, Mr. Johnson issued a Notice of Violation to Mr. Watrous, informing him that his construction of the stairway violated the Town Inland Wetlands

and Watercourses Regulations.   See Defs.' 56(a)1, ¶ 21; Pl.'s 56(a)2, ¶ 21.  Mr.

Watrous did not reply to this Notice.  See Defs.' 56(a)1, ¶ 22; Pl.'s 56(a)2, ¶ 22.  On July

11, 2006, Mr. Johnson served a Cease and Desist Order on Mr. Watrous, which

identified the stairway violation and indicated that a portion of the stairway might be in a

Coastal Review area overseen by the State Department of Environmental Protection

("DEP"), and further stated that work on the stairway may not continue until Mr. Watrous

appeared before the IWWC.  See Defs.' 56(a)1, ¶ 23; Johnson Aff., Ex. D; Pl.'s 56(a)2,

¶ 23.  Attached to the Cease and Desist Order was a report to the IWWC prepared in

advance of the next IWWC meeting.  See Defs.' 56(a)1, ¶ 24; Pl.'s 56(a)2, ¶ 24.

Mr. Watrous asserts this document stated:

There are other issues with this property, among them an alleged walk-out
basement which was expressly forbidden by the CIWC permit granted to Mr.
Watrous, the setback from the edge of the slope not being according to plan, as
well as property line disputes.  It is probable that Mr. Watrous will be finished with
this project before any legal action may be enacted and the property is marketed
for sale.  I would suggest that the Town Attorney be contacted to see what Action
may be taken to delay any sale of this property, which would only pass the
burden on to an innocent party.  Copies of all notices and Cease and Desist
actions should also be placed in his building file.  I see this violation taking a long
time to resolve and we shouldn't let him pass the burden on to someone else.

See Pl.'s 56(a)2 at 9.

On July 18, 2006, Mr. Watrous appeared before the IWWC and was advised to

file an application with the IWWC for the stairway.  See Defs.' 56(a)1, ¶ 25; Johnson

Aff., Ex. D; Pl.'s 56(a)2, ¶ 25.  Mr. Watrous filed the application on July 20, 2006.  See

Defs.' 56(a)1, ¶ 26; Johnson Aff., Exhibit D; Pl.'s 56(a)2, ¶ 26.

Mr. Watrous claims that, on July 26, 2006, his attorney sent a letter to Mr.

Congdon concerning Mr. Bobbin's complaints and Mr. Johnson's acceptance of those

complaints without further inquiry.  See Pl.'s 56(a)2 at 10.

6

On August 15, 2006, Mr. Watrous appeared before the IWWC with his attorney, who expressed his belief that the area of the Property in question was under the jurisdiction of the DEP, and not the IWWC.  See Defs.' 56(a)1, ¶ 28-29; Pl.'s 56(a)2, ¶ 28-29.  Mr. Johnson stated that the IWWC retained jurisdiction of wetlands above the high tide mark and said that the IWWC would get a legal opinion from the Town Attorney and a written opinion from the DEP.  See Defs.' 56(a)1, ¶ 30; Pl.'s 56(a)2, ¶ 30.

On September 14, 2006, an official from the DEP wrote an email to Preston's Town Planner stating that "the DEP has determined that your municipal IWW agency has jurisdiction to regulate activities within their upland review area that may potentially affect tidal watercourses such as Poquetanuck Cove."  See Defs.' 56(a)1, ¶ 32; Pl.'s 56(a)2, ¶ 32.

Mr. Watrous next appeared before the IWWC on September 19, 2006.  At this meeting, Mr. Borner told Mr. Watrous that the Town Attorney had informed Mr. Borner that the IWWC had jurisdiction over the Property, and the IWWC voted to have Mr. Johnson request access to the Property to perform a site visit to determine whether the location of the new residence matched earlier plans submitted to the IWWC.  See Defs.' 56(a)1, ¶ 35-36; Pl.'s 56(a)2, ¶ 35-36.

Mr. Watrous also says that Mr. Borner informed him that IWWC regulations prevented the IWWC from acting on Mr. Watrous' application for the stairway if another violation existed on the Property.  See Pl.'s 56(a)2, at 10.  In October 2006, Mr. Congdon, the Town First Selectman, performed a visual inspection of the Property to determine whether the new residence was in the correct location as approved in the site plan submitted earlier to the IWWC and the Town Building Department.  See Defs.'

56(a)1, ¶ 38; Pl.'s 56(a)2, ¶ 38.  There is no explanation on the record before the court of why Mr. Congdon, rather than Mr. Johnson -- who testified at the preliminary injunction hearing that it was his job to perform such inspections -- carried out this inspection.  See Pl.'s 56(a)2 at 13-14; Transcript of Preliminary Injunction Hearing (Doc. No. 60) at 199. Based solely on that inspection, Mr. Congdon reported to the IWWC that the house did not appear to be in the correct location.  See Defs.' 56(a)1, ¶ 39; Pl.'s 56(a)2, ¶ 39.

On October 13, Mr. Johnson sent a Notice of Violation by certified mail to Mr. Watrous that stated, "During a visual site inspection done by Mr. Robert Congdon, Preston First Selectman, it was determined that your house at 8 Pequot St. appears to be located in conflict with the requirements of the Inland Wetlands and Watercourses Commission regulations."  See Defs.' 56(a)1, ¶ 40; Johnson Aff., Exhibit I; Pl.'s 56(a)2, ¶ 40.  The Notice also informed Mr. Watrous that the matter would be further addressed at the next IWWC meeting.  Id.

However, at the IWWC's next meeting, on October 17, 2006, the IWWC opened the public hearing on Mr. Watrous' application and then canceled the hearing because it said the hearing was predicated on the condition that no other violations, in addition to the stairwell issue, existed on the Property.  See Defs.' 56(a)1, ¶ 41; Pl.'s 56(a)2, ¶ 41. The IWWC then discussed a viable remedy to insure that Mr. Watrous' new residence could not be sold with the pending violations.  See Defs.' 56(a)1, ¶ 42; Pl.'s 56(a)2, ¶ 42.

At that same meeting, the IWWC considered a complaint made by Mr. Watrous against Mr. Bobbin for, inter alia, expanding Mr. Bobbin's land into Poquetanuck Cove.

8

Mr. Bobbin was directed to file an application with the IWWC; no Notice of Violation or Cease and Desist Order was issued, and the violation was not referred to the DEP, as it was in Mr. Watrous' case. See Defs.' 56(a)1, ¶ 43-45; Pl.'s 56(a)2, ¶ 43-45.

On November 13, 2006, Mr. Johnson sent a Cease and Desist Order to Mr. Watrous by certified mail, which identified the violations on the property as the construction of the stairway and construction of a new house that appeared to be closer to the cove than was originally permitted. See Defs.' 56(a)1, ¶ 46-47; Pl.'s 56(a)2, ¶ 46-47. The November 13, 2006 Cease and Desist Order noted that the next IWWC meeting was scheduled for November 21, 2006 and that failure to comply with the order would result in legal action. See Defs.' 56(a)1, ¶ 48; Pl.'s 56(a)2, ¶ 48. The Cease and Desist Order also stated that, under the IWWC regulations, Mr. Watrous could appeal a decision or order of an Inland Wetlands Enforcement Officer to the IWWC. Id.

Mr. Watrous and his attorney appeared at the November 21, 2006 IWWC meeting. Again, no discussion was allowed on the subject of the stairwell application. Mr. Borner told Mr. Watrous' attorney that no discussion would be allowed until the item was discussed as a violation, rather than an application. See Defs.' 56(a)1, ¶ 50; Johnson Aff., Ex. L; Pl.'s 56(a)2, ¶ 50.

According to the minutes of that meeting, which neither party disputes as inaccurate, the Property came up for discussion again under the portion of the meeting discussing Violations and Orders. See Johnson Aff., Ex. L. Mr. Watrous' attorney pointed out that the visual inspection by Mr. Congdon that formed the basis of the October 13, 2006 violation could not provide evidence of a violation because the original structure on the property had been removed, eliminating a point of reference for Mr.

Congdon to make his determination.  Mr. Borner suggested that, if the house was in the correct place, Mr. Watrous should approve a survey request from the IWWC, a suggestion that Mr. Watrous' attorney said was unfounded given the lack of a reference point.  Mr. Watrous' attorney also pointed out that the Commission did not have jurisdiction over tidal wetlands.  Mr. Watrous said that he would refuse IWWC access to the Property, and Mr. Borner said that the Town Attorney would be notified to proceed with legal action.  See Defs.' 56(a)1, ¶ 51-52; Johnson Aff., Ex. L; Pl.'s 56(a)2, ¶ 51-52.

The IWWC met again on December 19, 2006,[3] and voted to reject Mr. Watrous' application for construction of the stairway due to outstanding violations and discussed that the violations may eventually be litigated.  See Defs.' 56(a)1, ¶ 53-54; Pl.'s 56(a)2, ¶ 53-54.  On December 28, Mr. Borner sent a certified letter to Mr. Watrous informing him of the rejection and explaining, "It was voted to reject this motion due to an outstanding violation on the property."  See Defs.' 56(a)1, ¶ 55; Pl.'s 56(a)2, ¶ 55.  At that same meeting, Mr. Bobbin's IWWC application was approved.  See Johnson Aff., Ex. M; Pl.'s 56(a)2, at 11.

A few months later, on April 5, 2007, another Cease and Desist Order was sent by certified mail to Mr. Watrous, referencing the November 13, 2006 Cease and Desist Order.  See Defs.' 56(a)1, ¶ 56; Pl.'s 56(a)2, ¶ 56.

Mr. Watrous appeared before the IWWC on April 17, 2007, and requested that the matter be placed on the following month's agenda, due to the fact that his attorney could not be present.  See Defs.' 56(a)1, ¶ 57; Pl.'s 56(a)2, ¶ 57.  On May 8, 2007, Mr. Johnson sent another Cease and Desist Order to Mr. Watrous, which included a

---

[3] The parties' submissions reflect both a meeting date of December 18 and December 19.  The meeting minutes refer to December 19, and the court will use that date.  See Johnson Aff., Ex. M.

mistaken date for the next public IWWC meeting.  See Defs.' 56(a)1, ¶ 57; Pl.'s 56(a)2, ¶ 57.  At the next IWWC meeting on May 15, 2007, the IWWC noted the error and indicated it would send a new Cease and Desist Order for the proper date of the following meeting.  See Defs.' 56(a)1, ¶ 58; Pl.'s 56(a)2, ¶ 58.  Mr. Johnson sent another Cease and Desist Order to Mr. Watrous by certified mail on June 12, 2007. See Defs.' 56(a)1, ¶ 60; Pl.'s 56(a)2, ¶ 60.

At the June 19, 2007 meeting, which Mr. Watrous did not attend, the IWWC voted that the Property was in violation of the regulations in two respects: that the stairway to the water was built without an application and that the location of the new residence was not in accordance with the approved site plan.  The IWWC further voted to attach notice of these violations to the property records.  See Defs.' 56(a)1, ¶ 61-64; Pl.'s 56(a)2, ¶ 61-64.

On July 10, 2007, Mr. Johnson sent yet another Cease and Desist Order to Mr. Watrous by certified mail that indicated Mr. Watrous was required to attend the next IWWC meeting.  See Defs.' 56(a)1, ¶ 65; Pl.'s 56(a)2, ¶ 65.  Mr. Watrous did not attend, but submitted a letter by hand to the IWWC clerk explaining that Mr. Watrous would not attend the meeting.  See Defs.' 56(a)1, ¶ 66; Pl.'s 56(a)2, ¶ 66.  The IWWC again found Mr. Watrous in violation of the IWWC regulations for the two reasons stated above.  Id. On September 12, 2007 a Notice of Cease and Desist Order, signed by Mr. Borner, was recorded in the Town Land Records.  See Defs.' 56(a)1, ¶ 67; Pl.'s 56(a)2, ¶ 67.

On November 27, 2007, the DEP wrote a letter to the IWWC stating that the Property contained violations under the DEP's jurisdiction.  See Defs.' 56(a)1, ¶ 68; Pl.'s

56(a)2, ¶ 68.  Mr. Watrous received a Notice of Violation from the DEP on December 18, 2007, regarding the stairwell.  See Defs.' 56(a)1, ¶ 69; Pl.'s 56(a)2, ¶ 69.

On March 5, 2009, Mr. Johnson received an email from DeAva Lambert, an environmental analyst at the DEP suggesting that the wetlands in Poquetanuck Cove are tidal wetlands subject to the Tidal Wetlands Act.  See Defs.' 56(a)1, ¶ 70; Johnson Aff., Ex. X; Pl.'s 56(a)2, ¶ 70.

On May 28, 2009, Mr. Watrous received a compliance statement from the DEP concerning the stairwell on the Property.  A copy of this statement was sent to the Town Building Department.  See Defs.' 56(a)1, ¶ 72; Pl.'s 56(a)2, ¶ 72.

On June 16, 2009, the IWWC met and Mr. Watrous appeared to discuss the ongoing issues with his Property.  Mr. Watrous presented an A-2 survey he had commissioned and submitted to the IWWC, which was intended to confirm the existing location of the new residence.  See Defs.' 56(a)1, ¶ 73-75; Pl.'s 56(a)2, ¶ 73-75.  Mr. Borner told Mr. Watrous that the A-2 did not answer the IWWC's question about the house being built in the proper location according to the site plan, and asked Mr. Watrous if he had objections to an independent engineer confirming the location.   Mr. Watrous did not object.  See Defs.' 56(a)1, ¶ 73-77; Pl.'s 56(a)2, ¶ 73-77.

Mr. Watrous asserts that the IWWC engaged an outside engineering company, which found that the new house was built in the location indicated on the approved site plan, but it did not address whether the new residence was located closer to Poquetanuck Cove than the original structure.  See Pl.'s 56(a)2 at 12; Ex. E.  Mr. Watrous further asserts that his attorney sent the acting chairman of the IWWC, John Moulson, a letter on October 20, 2009, summarizing the evidence in the case to date

and requesting withdrawal of the Cease and Desist Orders based on the conclusions of, inter alia, the A-2 survey and the independent engineer survey, and that Mr. Moulson met with the IWWC in executive session.  See Pl.'s 56(a)2 at 13; Ex. E.  Mr. Watrous also claims that the Notice of Cease and Desist remains on Mr. Watrous' land records, and that he is unable to market or sell the property.  See Pl.'s 56(a)2 at 13.

The defendants claim that they did not do anything to intentionally deprive Mr. Watrous of his constitutional rights, that they did not try to influence the votes or actions of other IWWC members, that they did not act in concert with David Bobbin, and that they did not engage in any activity while believing they did not have jurisdiction over the Property.  See Defs. 56(a)1, ¶ 81-89.  Mr. Watrous disputes these assertions.  See Pl.'s 56(a)2, ¶ 81-89.

## IV.    DISCUSSION

Before this court are two motions for summary judgment relating to most of the original counts in Mr. Watrous' Complaint.  See supra, n.3.  As best this court can determine, the claims at issue in the pending motion are Mr. Watrous' claim against all defendants as to violation of his federal substantive due process rights (Count One) and federal procedural due process rights (Count Two).  Also a subject of a Motion for Summary Judgment is Mr. Watrous' claim that the Individual Defendants, and the IWWC, engaged in a conspiracy to deprive him of his constitutional rights under 42 U.S.C. § 1983 ("section 1983") (Count Three).

The Individual Defendants argue that Mr. Watrous' procedural due process claim fails as a matter of law because Mr. Watrous lacked a constitutionally-protected property interest and because he was provided with all of the process required under

13

the Constitution.  See Defendants' Memorandum of Law in Support of Motion for Summary Judgment As To Individual Defendants ("Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs.") (Doc. No. 116-9), 3-18.  They also claim that Mr. Watrous' federal substantive due process claims fail because Mr. Watrous cannot prove that he was deprived of a property interest by conduct that shocks the conscience.  Id. at 18-28. The Individual Defendants further claim that Mr. Watrous' conspiracy claim under section 1983 fails because Mr. Watrous cannot prove the necessary elements of such a violation and because the claim is barred by the Intra-corporate Doctrine.  Id. at 28-32. Lastly, the Individual Defendants claim they are protected by qualified immunity as to the claims against them.  Id. at 32-40.

The Town and the IWWC argue that the IWWC is not a proper defendant because it is not a legal entity capable of being sued directly and therefore should be terminated as a party.  See Defendants' Memorandum of Law in Support of Motion for Summary Judgment As To the Town of Preston and the Town of Preston Inland Wetlands and Watercourses Commission ("Defs.' Memo./Town and IWWC") (Doc. No. 117-9) at 4-7.  The Town further argues that it is not liable for any deprivations of Mr. Watrous' rights because Mr. Watrous has failed to show that such deprivations were caused by a municipal policy or custom under the Monell standard.  Id. at 8-10.

Mr. Watrous disputes all of these arguments.

A.  IWWC As Proper Defendant

As a preliminary matter, the IWWC argues that it is not a proper defendant because it is not an entity with the legal capacity to be sued.  See Defs.' Memo. Supp.

Mot. Summ. J. Town/IWWC at 4.  The IWWC argues that it is the Town, not the IWWC, which is the only proper municipal defendant in this case.

A municipality is subject to suit pursuant to section 1983.  See Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 163 (D. Conn. February 16, 2005) (citing Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).  Cases examining whether a particular entity is a "person" for the purposes for section 1983 look to whether it is an "independent legal entity" capable of suing and being sued.  See Nicholson, 365 F. Supp. 2d at 164 ("A municipal police department is a sub-unit or agency of the municipal government through which the municipality fulfills its policing function. Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983); Peruta v. Hartford Parking Authority, No. 3:09-CV-1946, 2010 WL 3169369 (D. Conn. Aug. 10, 2010) (terminating a municipal parking authority from a section 1983 action because it was not an independent legal entity capable of suing and being sued under state law); Smith-Berch, Inc. v. Baltimore County, 68 F. Supp. 2d 602, 626-27 (D. Md. August 9, 1999) (collecting cases determining that the definition of "persons" in the context of section 1983 does not imply municipal departments).

By Connecticut statute, any municipality has the power to sue and be sued. Conn. Gen. Stat. § 7-148(c)(1)(A).  Municipality is defined as "any town, city or borough, consolidated town and city or consolidated town and borough."  Conn. Gen. Stat. § 7-148(a).  Unless municipal departments constitute separate "bodies politic" under state law, the proper defendant is the municipality, not the municipality's administrative subdivision.  See Levine v. Fairfield Fire Dep't., No. X01CV890146670S, 1999 WL

241734, *3 (Conn. Super. April 9, 1999) (unpublished).  In determining whether a municipal subdivision constitutes a separate body politic, courts have looked to whether a specific statute enables the entity to sue or be sued.  See Luysterborghs v. Pension & Ret. Bd., 50 Conn. Supp. 351, 355 (Conn. Super. June 6, 2007); see also Zahrijczuk v. Branford Water Pollution Control Auth., No. CV116024727, 2012 WL 1511369, *1 (Conn. Super. April 10, 2012) (unpublished).

Connecticut law does not generally establish that all municipal subdivisions are legal entities separate from the municipality itself.  See Luysterborghs, 50 Conn. Sup. at 355.  Instead, the legislature has explicitly granted such independent legal status only to certain specific departments.  See, e.g., Conn. Gen. Stat. § 10-241 ("Each school district shall be a body corporate and shall have the power to sue and be sued"); Conn. Gen. Stat. §7-233e (stating that municipal electric energy cooperatives are classified as a "public corporate body and politic" and may "sue and be sued").  Courts have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic.  See, e.g., Luysterborghs, 50 Conn. Sup. at 356 (holding that municipal pension boards may not be sued); Himmelstein v. Town of Windsor, No. HHDCV054013928S, 2006 WL 1493229, *3 (May 16, 2006) ("[M]unicipal police departments do not constitute an independent legal entity amendable to suit.").  At least one Connecticut court has held that entities whose definition as "quasimunicipal corporations" is well-established by the Connecticut Supreme Court may be found capable of suing and being sued despite the absence of explicit statutory authorization.  See Zahrijczuk, 2012 WL 1511369 at *7.

16

Turning to the IWWC, Connecticut law requires municipalities to establish an inland wetlands agency or authorize an existing board or commission to carry out the provisions of the enabling legislation, Conn. Gen. Stat. §§ 22a-36 - 22a-45.  See Conn. Gen. Stat. § 22a-42(c) ("Each municipality, acting through its legislative body, may authorize any board or commission, as may be by law authorized to act, or may establish a new board or commission to promulgate such regulations, in conformity with the regulations adopted by the commissioner . . . as are necessary to protect the wetlands and watercourses within its territorial limits.").  The authorizing legislation does not explicitly declare such inland wetlands agencies to be "bodies politic" or capable of suing and being sued.

State law does, however, provide for an appeals process from decisions of inland wetland agencies that specifically contemplates filing actions in state court.  See Conn. Gen. Stat. § 22a-43 ("The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive" may "appeal to the superior court for the judicial district where the land affected is located . . . .  Such appeal shall be made returnable to the court in the same manner as that prescribed for civil actions brought to the court" except for certain time specifications).  Additionally, the authorizing legislation creates an enforcement action against individuals who commit, take part in, or assist violations under the statute, and specifically allows "any person" to bring such actions in Superior Court.  See Conn. Gen. Stat. § 22a-44(b) (also stating that violations can carry civil penalties of up to $1,000); Windels v. Envtl. Prot. Comm'n, 284 Conn. 268, 303 (2007) ("We have concluded that § 22a-44(b) confers a private cause of action and allows a claim that a

defendant has failed to obtain the required permit for a regulated activity").  Mr. Watrous argues that, because the IWWC can seek enforcement of violations of Conn. Gen. Stat. §§22a-36 et. seq., it is an entity against which the remedies of section 22a-44(b) can be sought.  See Pl.'s Memo./Town and IWWC at 17.

Finally, Mr. Watrous argues that Connecticut courts have, on multiple occasions, entertained suits against inland wetlands agencies without questioning the propriety of the inclusion of the agencies as party defendants.  See Monroe v. Middlebury Conservation Comm'n, 187 Conn. 476 (1982) (action for injunction to compel an inland wetland agency to hold a public hearing); Aaron v. Conservation Comm'n, 178 Conn. 173 (1979) (reversing decision of lower court to decline to entertain declaratory judgment action relating to claim that a conservation commission lacked jurisdiction over septic systems).

While this court acknowledges that inland wetland agencies have appeared as party defendants in Connecticut state court cases, actions pursuant to the explicitly authorized administrative appeals process or the private right of action to ensure enforcement of wetlands regulations is not the same as an explicit statutory authorization to constitute an entity as a body politic capable of suing and being sued. As one Connecticut case observed, after noting the surprising paucity of Connecticut law on the subject of when entities are capable of suing and being sued, "A successful administrative appeal does not render the defendant authority liable for monetary damages, and it is difficult to generalize from the provision that the legislature has conferred on the authority the capacity to be sued in other contexts."  Zahrijczuk, 2012 WL 1511369 at *3.

This court further notes that these state decisions do not address the question of whether inland wetlands agencies are capable of suing or being sued.  "The fact that a suit was uncontested does not support the conclusion that the commission is a separate legal entity."  Holt v. Town of Stonington, No. 3:09-cv-2069, 2011 WL 5864812, *4 (D. Conn. Nov. 18, 2011) (citing Luysterborghs, 50 Conn. Sup. at 357).  Additionally, inland wetlands agencies have not been found to be quasi-municipal entities.  See Denehy v. Inland Wetlands & Watercourses Comm'n, No. CV940704881S, 1994 WL 247903, *2 (Conn. Super. May 27, 1994) (unpublished) (finding in an action relating to an administrative appeal that, "The Agency is not a municipal or quasi-municipal corporation so as to allow service upon its presiding officer or managing agent").

The court does pause, however, in light of a recent case decided by another court in this district.  In Arrigoni Enterprises, LLC v. Town of Durham, No. 3:08-CV-520, 2011 WL 4572025 (D. Conn. Sept. 30, 2011), the court held that a municipal planning and zoning commission and a municipal zoning board of appeals were proper defendants in a section 1983 action.  Arrigoni, 2011 WL 4572025 at *8 (holding that a zoning commission was capable of being sued directly under section 1983 because "[Z]oning commissions function legislatively when adopting zoning regulations and holding public hearings for the adjudication of individual petitions for zoning redress").  The court in Arrigoni relied on a Connecticut Supreme Court case for the proposition that a zoning commission is delegated significant legislative powers and therefore is a "person" within the meaning of section 1983.  With due respect to a sister court, this court believes Arrignoi over-read the underlying Connecticut case, Thomas v. City of West Haven, 249 Conn. 385 (1999), which, at any rate, is not binding on this court.  The

19

court in <u>Thomas</u> evaluated a <u>Monell</u> claim brought against a city and its zoning commission based on the argument that the zoning commission's action constituted municipal policy for <u>Monell</u> purposes.  The Connecticut Supreme Court did indeed write, "[T]he plaintiffs had established a prima facie case against the city and the commission," but is appears by this language that the court meant that the city was liable, under <u>Monell</u>, for the actions of a final policymaker employed by the city, not that the zoning commission was a separate municipal entity.  <u>Thomas</u>, 249 Conn. at 410.  This court certainly agrees that municipal sub-agencies can be final policymakers for <u>Monell</u> purposes, but this simply means that the municipal entity is liable for those actions, not that the sub-agency itself is an independent legal entity.  Accordingly, this court does not find that a municipal department -- by acting in a quasi-legislative manner at times as the IWWC arguably does -- becomes an independent legal entity capable of suing and being sued.

Without explicit statutory authorization declaring inland wetland agencies capable of suing and being sued, the court sees no reason to read such authorization into the statute.  Accordingly, the court grants summary judgment in favor of the IWWC as to all claims against it and dismisses it as a party to this action.  The Town, of course, remains a proper party defendant.

B. <u>Procedural Due Process</u>

The Individual Defendants argue that they are entitled to summary judgment on Mr. Watrous' procedural due process claims because (1) Mr. Watrous lacked a constitutionally-protected property interest, and (2) Mr. Watrous was provided all of the process required under the Constitution.

20

1.  Property Interest

Courts generally apply a two-part analysis in evaluating claims of procedural due process violations.  "First, we ask 'whether there exists a . . . property interest of which a person has been deprived.'  If so, we then 'ask whether the procedures followed by the State were constitutionally sufficient.'"  <u>Oneida Indian Nation of New York v. Madison County</u>, 665 F.3d 408, 428 (2d Cir. 2011) (quoting <u>Swarthout v. Cooke</u>, 131 S.Ct. 859, 861 (2011)).

"Property interests 'are not created by the Constitution,' but 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"  <u>Id.</u> (quoting <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  The parties here dispute that Mr. Watrous had a property interest that was violated by the actions of the Individual Defendants and the Town.  Exactly what the supposed property interest consists of is also disputed.  The defendants define Mr. Watrous' supposed interest as "the right to develop the subject property without being subject to the jurisdiction of the IWWC."  <u>See</u> Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 6.  Mr. Watrous refers to his property interests in the already existing permits he was granted, including the Certificate of Occupancy and the certificate from the Town Planning and Zoning Commission confirming that the new residence conformed to the approved site plan.  He also claims a property interest in a clear title to the Property and the ability to sell or mortgage that Property.  <u>See</u> Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment of the Individual Defendants ("Pl.'s Memo./Indiv. Defs.") (Doc. No. 124) at 15.

Mr. Watrous argues that Connecticut law contemplates that actions that have the effect of restricting an owner's ability to sell or mortgage property are infringements of a property interest.  See Connecticut v. Doehr, 501 U.S. 1, 11 (1991) ("[T]he property interests that attachment affects are significant.  For a property owner like Doehr, attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property; taints any credit rating; reduces the chance of obtaining a home equity loan or additional mortgage").  Due process rights attach to even temporary or partial impairments of those interests.  Id.  ("Without doubt, state procedures for creating and enforcing attachments, as with liens, are subject to the strictures of due process") (internal quotations omitted).

At first glance, it seems apparent that Mr. Watrous had an existing property interest in his already-granted permits and approvals from various Town authorities, including the IWWC, and a property interest in the enjoyment and use of his land and constructed residence.  See  Contractor's Supply of Waterbury, LLC v. Commn'r of Envtl. Prot., 283 Conn. 86, 108 (2007) ("We have held that a license or a permit becomes a property right once it has been issued, and it remains such until its expiration date so long as the laws pertaining to its use are obeyed.").  This analysis is complicated, however, by the fact that Mr. Watrous did apply for an IWWC permit regarding the stairwell, at the IWWC's urging, and was subsequently issued Cease and Desist orders concerning both the stairway issue and the issue over whether the new residence was properly sited.

The defendants urge this court to apply the "clear entitlement" test to determine whether, in fact, Mr. Watrous had a protected property interest.  "It is well settled in this

Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." Gagliardi v. Village of Pawling, 18 F.3d 188, 192 (2d Cir. 1994); see also Musco Propane, LLP v. Town of Wolcott, No. 3:10-CV-1400, 2011 WL 3267756, *5 (D. Conn. July 28, 2011). "A plaintiff has a legitimate claim of entitlement to a particular benefit if [] absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted." Id. (internal quotations omitted). Further, the Individual Defendants argue that the IWWC's enforcement actions were mere exercises of the Town's police powers, and that one does not have a "property interest" in avoiding routine regulation. See Pl.'s Memo./Indiv. Defs. at 6.

Courts in the Second Circuit caution that the inquiry into whether a clear entitlement to a particular benefit exists focuses on whether conferral of that benefit was certain or very strongly likely to occur .

> If federal courts are not to become zoning boards of appeals (and not to substitute for state courts in their state law review of local land-use regulatory decisions), the entitlement test . . . -- certainty or a very strong likelihood of issuance -- must be applied with considerable rigor.  Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case.

RRI Realty Corp. v. Inc. Vill. of Southampton, 870 F.2d 911, 918 (2d Cir. 1989) (internal quotations omitted).  This applies even in the case where the reasons for denying an application might have been arbitrary.  "The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." Id.

Here, however, the defendants do not dispute that Mr. Watrous is correct in his challenges to the merits of the denial of his IWWC application and the issuance of cease and desist orders because the IWWC lacks jurisdiction over the Property.  Nor do

they argue that the IWWC's land regulation powers are discretionary, thereby defeating claims to a clear entitlement to a protected property interest.  Instead, they argue that because the question of the IWWC's jurisdiction was <u>uncertain</u> at the time of the IWWC's action, Mr. Watrous cannot be said to have clear entitlement to the protected property interest discussed above.  <u>See</u> Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 6.

This "uncertainty" corollary to the "clear entitlement" doctrine is expressed most fully in <u>Natalie v. Town of Ridgefield</u>, 170 F.3d 258 (2d Cir. 1999).  In that case, the court found that a plaintiff lacked a constitutionally-protected property right because the permits he sought "turned ultimately on the resolution of the parties' state law dispute as to whether Natale had grandfathered subdivision rights."  <u>Natalie</u>, 170 F.3d at 263. Because resolution of the state law issue was a "legitimate dispute" concerning the proper meaning of a statute and the correct interpretation of a state court decision, the plaintiff could not be said to have had clear entitlement to the approval of a permit.  <u>Id.</u> at 264.  <u>See also</u> <u>O'Mara v. Town of Wappinger</u>, 485 F.3d 693, 700 (2d Cir. 2007) ("The question of law surrounding the enforceability of the open space restriction is as uncertain as the law at issue in <u>Natale</u>.  Even if the New York Court of Appeals were to conclude that the 1963 plat was unenforceable, the uncertainty that leads us to certify this issue means that the O'Maras did not have clear entitlement to a certificate of occupancy and therefore no cognizable property interest.") (internal quotations omitted).

The Individual Defendants argue that the instant case is similar to that presented in <u>Natale</u> and <u>O'Mara</u>.  That they lacked jurisdiction over Mr. Watrous' property was, they argue, not at all obvious to anyone involved, not Mr. Watrous, not the DEP, not the

IWWC, and not even to this court, which asked for supplemental briefing to aid its ruling for partial summary judgment.[4]  See Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 10-13.

Here, however, the question is not whether the IWWC correctly interpreted existing regulations as applied to the Property, but whether the IWWC had the jurisdiction to act at all.  The court is persuaded that, particularly in the context of the cease and desist orders, the IWWC acted to infringe an existing property interest because it lacked jurisdiction to act in the first instance.  See Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 379 (2d Cir. 1995) ("[T]he clear entitlement test no longer was applicable to the special permit because the test applies only to permits being sought. The special permit, once issued, unquestionably was the property of Villager Pond. Therefore, the district court improperly dismissed the due process claims on the ground that Villager Pond had no property interest in the special permit."); see also Brady v. Town of Colchester, 863 F.2d 205 (2d Cir. 1988) (declining to determine on summary judgment that the plaintiff's lacked a protected property interest, in part, because the zoning commission may have had no authority to act in the first instance).  Here, the Town had already issued Mr. Watrous a Certificate of Occupancy confirming his house was properly situated.  Thus the court is persuaded that, because the IWWC lacked jurisdiction to act (and did not merely misinterpret regulations), Mr. Watrous' entitlement to his property interest was clear.

Further, the court notes that, simply because the IWWC and the DEP were initially mistaken as to the limits of their jurisdiction, does not mean that "uncertainty"

---

[4] The court requested supplemental briefing because, inter alia, it sought the parties' views on an issue the court had identified as perhaps determinative, but which issue the parties had not focused on.

existed as to the proper interpretation of the law.  While the technical definitions of "tidal

wetlands" and "upland review areas" might give rise to questions of uncertainty, the

jurisdictional question was decided on a much clearer basis: the fact that Mr. Watrous'

violations were located outside of municipal limits.   As this court reasoned:

> Under well-established rules of Connecticut property law, the Cove lies outside
> the territorial limits of the Town of Preston, and the Preston IWWC therefore
> lacks jurisdiction over the Cove.  As a consequence, the Preston IWWC also
> lacks jurisdiction over any portion of the Property as an 'upland review area'
> affecting the Cove."

See Order Granting Motion For Partial Summary Judgment at 6.  Thus, even under the

"uncertainty" issue raised in Natale, Mr. Watrous had a federally-protected property

interest.

Finally, the court notes a factual dispute between Mr. Watrous and the Individual

Defendants concerning whether or not the defendants' actions actually deprived Mr.

Watrous of his protected property interest.  The Individual Defendants assert that Mr.

Watrous' deposition indicates he has been able to transfer ownership of the Property to

joint ownership with his daughter, and refinance the Property, eliminating claims that Mr.

Watrous has been deprived of anything related to the Property.  See Reply to

Memorandum of Law in Opposition to Motion for Summary Judgment of Individual

Defendants ("Reply Memo./Indiv. Defs.") (Doc. No. 129) at 3; Exhibit B.

Mr. Watrous asserts he has been unable to sell his property, and both parties

agree that the IWWC discussed taking the action it did in part to prevent Mr. Watrous

from selling the Property.  See Pl.'s 56(a)2 at 13; Defs.' 56(a)1, ¶ 42; Pl.'s 56(a)2, ¶ 42.

See also Goodspeed Airport, LLC v. East Haddam Land Trust, Inc., No. 3:01-CV-403,

2005 WL 1403822, *3 (D. Conn. June 13, 2005) ("a cease and desist order can still

violate a constitutional right, even if on its face the order merely prohibits unlawful conduct, if the plaintiff establishes that the order nevertheless has the effect of restraining some lawful conduct as well.").  There is a disputed material fact as to whether Mr. Watrous was deprived of a constitutionally-protected property interest.

2. Sufficient Process

Concluding that a material issue of fact exists as to whether Mr. Watrous has been deprived of a constitutionally-protected property interest, however, does not end the inquiry as to whether summary judgment is appropriate as to Mr. Watrous' procedural due process claim.  Determining whether Mr. Watrous was afforded constitutionally adequate process requires this court to engage in a balancing test because "[d]ue process . . . is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  In determining whether a procedure satisfies due process, a court must consider: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest though the procedures used and the probable value (if any) of the alternative procedures; and (3) the government's interest, including the possible burden of alternative procedures."  See O'Connor v. Pierson, 426 F.3d 187, 197 (2d Cir. 2005).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

The Individual Defendants argue that Mr. Watrous was provided all of the pre-deprivation process that was constitutionally required.  "The Plaintiff simply cannot show that he was deprived of a constitutionally-adequate notice and hearing.  He was given several notices of hearings and hearings were held on his application and his claim that

the IWWC lacked jurisdiction was presented by the Plaintiff and his counsel to the IWWC."  Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 16.

Mr. Watrous argues that summary judgment is not appropriate because, in the course of the IWWC's decision-making process regarding the construction of his stairway, he was denied -- on more than one occasion -- a public hearing based on a "non-existent regulation."  See Pl.'s Memo./Indiv. Defs. at 16.

Because the IWWC's violation and cease and desist order process is a routine procedure governed by state law, "the state can predict when [deprivation] will occur and is in the position to provide a pre-deprivation hearing."  Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  "Under those circumstances, 'the availability of post-deprivation procedures will not, ipso facto, satisfy due process.'"  Id. (quoting Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 800 (2d Cir. 1996)).  This standard is applied in contrast to that governing due process claims stemming from the random, unauthorized acts of state employees.  In such cases "the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."  Id.

Pre-deprivation procedures are also evaluated in terms of the due process principle "mandating that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Id.  "Pre-deprivation process 'need not be elaborate.'  Because the purpose of pre-deprivation process is to 'serve as an initial check against mistaken decisions,' the Constitution 'mandates only that such process include, at a minimum, notice and the opportunity to respond.'"

Motara v. Katkocin, No. 3:05-CV-880, 2007 WL 4105283, *9 (D. Conn. Nov. 16, 2007) (quoting O'Connor, 426 F.3d at 198).

Here, Mr. Watrous was summoned before the IWWC on multiple occasions for slightly different reasons, rendering the court's analysis somewhat complicated.

Both parties do not contest that the IWWC first became aware of potential issues with Mr. Watrous' stairway on June 20, 2006, leading to the issuance of a Notice of Violation on June 23, followed by a Cease and Desist Order on July 11.  Mr. Watrous appeared before the IWWC soon thereafter, on July 18, and was told to apply for a permit from the IWWC, which Mr. Watrous soon did.  On August 15, 2006, before any cease and desist orders had been recorded in the Town land records, and before the IWWC rejected Mr. Watrous' application, Mr. Watrous appeared with his attorney before the IWWC and asserted that the DEP, not the IWWC, properly had jurisdiction over the Property.  See Defs.' 56(a)1, ¶ 28-29; Pl.'s 56(a)2, ¶ 28-29.

Mr. Watrous alleges that the violation of his procedural due process rights happened soon thereafter.  Following Mr. Congdon's visual inspection of Mr. Watrous' property, Mr. Watrous received a Notice of Violation stating that the new residence appeared to be located in conflict with the IWWC's regulations and suggesting the matter would be discussed at the next IWWC meeting.  However, at this next meeting, a hearing on the stairway application was canceled because of the presence of alleged other violations on the Property.  Subsequently, Mr. Watrous received another Cease and Desist Order, and the process repeated when the next IWWC meeting took place. On the same day as this second cancellation, November 21, 2006, Mr. Watrous' attorney did address the IWWC, albeit in a section of the public meeting concerning

29

"Violations," rather than applications.  At this meeting, Mr. Watrous' attorney suggested that the conclusion drawn from Mr. Congdon's visual inspection was baseless.  Mr. Watrous did not again appear before the IWWC before the IWWC rejected his application regarding the stairway on December 19, 2006, or before the IWWC voted to record a Cease and Desist order on the Town land records on July 10, 2007.  Mr. Watrous was apprised of several IWWC meetings between December 2006 and July 2007, but did not attend.

This court notes that the IWWC twice alerted Mr. Watrous to the importance of attending a public hearing to defend his application regarding the stairway, but he was twice restricted from doing that for which he had been so summoned.  Despite this seemingly absurd Catch-22, the court also notes that Mr. Watrous was able to present his substantive concerns before the IWWC.  On August 15, 2006, Mr. Watrous' attorney appeared before the IWWC and presented Mr. Watrous' position that the IWWC lacked jurisdiction over the Property, an assertion that did produce some action from the IWWC in the form of solicitation of the DEP and the Town Attorney for their opinions on the matter, both of which, at least initially, supported the IWWC's jurisdiction.  Further, while Mr. Watrous was unable to defend his stairway application directly during the two meetings in question, he was able to challenge the validity of Mr. Congdon's visual inspection, which led to the Notice of Violation, which, in turn, led to the cancellation of the public meetings in the first place.

The court must be guided by precedent, which counsels that "[a] breach of procedural requirements does not create a due process violation unless an individual was denied a fair forum for protecting his state rights."  Kshel Realty Corp. v. City of

New York, 293 Fed.Appx. 13, 16 (2d Cir. 2008) (quoting McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990)).  While the forum afforded Mr. Watrous prior to the deprivation of property interest allowed him to air his substantive grievances prior to the point of decision before the IWWC, the court is convinced that a material fact exists as to whether such opportunities were indeed fair.

The court now turns to the post-deprivation procedures available to Mr. Watrous. Following the December 19, 2006 rejection of Mr. Watrous' stairway application before the IWWC, and the June 19, 2007 meeting at which the IWWC voted to attach notice of the violations on the Property to the property records, Mr. Watrous did not appear before the IWWC, at least once because of IWWC error and at least once because Mr. Watrous stated that his attorney could not attend.  Mr. Watrous still had not appeared before the IWWC when the body voted, again, to find Mr. Watrous in violation of IWWC regulations.  However, when Mr. Watrous received a compliance statement from DEP regarding his stairway, he did meet with the IWWC.  During this meeting, Mr. Watrous presented evidence of a survey that he said confirmed the location of the new residence, and would therefore eliminate this outstanding violation.  At this June 16, 2009 meeting, Mr. Borner stated that the survey was inadequate and asked for permission to commission a new study, by an outside engineer.  Mr. Watrous did not object.  It is clear that this independent engineer was engaged and completed the survey.  Mr. Watrous asserts that this evidence was presented to the IWWC in the form of a letter from Mr. Watrous' attorney on October 20, 2009, and that no subsequent action was taken by the IWWC to remove the Cease and Desist orders from the property records.  Pl.'s 56(a)2, Ex. E; Pl.'s 56(a)2 at 13.

In Mr. Watrous' deposition, he stated that he was not allowed to enter the October 2009 executive session of IWWC officials during which his house was being discussed.  Mr. Watrous alleges that the outcome of this meeting was a decision by the IWWC to file suit against him. Pl.'s 56(a)2, Ex. A at 157.  The defendants do not address or contest this evidence.  The court concludes that Mr. Watrous has raised a disputed issue of material fact as to whether he was denied a meaningful post-deprivation hearing regarding his evidence, purportedly evidence directly contradictory to the finding of a violation on the Property.

The Individual Defendants argue, however, that because Mr. Watrous never availed himself of a judicial appeals process before the state courts, he cannot be said to have suffered a deprivation of his procedural due process rights.  See Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 16.  Connecticut law does provide for an appeals process whereby, "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, a district or municipality . . . may . . . appeal to the superior court for the judicial district where the land affected is located."  Conn. Gen. Stat. § 22a-43.

The court is mindful, that "If there is a constitutional violation, federal courts are available to hear § 1983 suits despite the availability of adequate state procedures." Hellenic Am. Neighborhood Action Comm., 101 F.3d at 882 (emphasis in original). However, where adequate post-deprivation remedies exist, there may be no constitutional violation in the first instance.  See Brady, 863 F.2d at 211 ("[T]he Bradys could have sought meaningful review of the CPCZ's decisions within the state judicial

system, but chose instead to commence the present action. . . . Hence, we conclude that appellants' procedural due process claim is without merit.").

Mr. Watrous argues that such appellate remedy was not actually available to him, as the IWWC never published their final decisions in a newspaper, thus starting the time period for appeals under Conn. Gen. Stat. § 22a-43 and Conn. Gen. Stat. § 8-8. Section 43 provides that an aggrieved person may appeal within the time period specified in section 8, which runs from the publication of final decisions.  Conn. Gen. Stat. § 8-8(b).  Mr. Watrous does not contest that he was provided notice, via certified mail, of the actual decisions and actions of the IWWC he claims caused a deprivation of his property interest.  See, e.g., Defs.' 56(a)(1) at ¶ 40, 46; Pl.'s 56(a)(2) at ¶ 40, 46. Nor does Mr. Watrous claim that he asked the IWWC to publish, formally, those decisions, or that he moved to publish such decisions himself.  See Conn. Gen. Stat. § 22a-42a ("The applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision and the agency shall cause notice of their order in issuance, denial, revocation or suspension of a permit to be published in an newspaper having a general circulation in the town wherein the wetland or watercourse lies.  In any case in which such notice is not published within such fifteen-day period, the applicant may provide for the publication of such notice within ten days thereafter.").

Mr. Watrous cannot claim to be aggrieved by the non-publication of the IWWC's actions because he himself had notice of those actions and was free to act or initiate his own action.  Further, were Mr. Watrous to contend that the IWWC's failure to formally publish their decisions made those decisions somehow not final agency actions, Mr.

Watrous would face a new legal hurdle as to whether his claims in this court are ripe for judicial review.

The question, however, remains as to whether this provision of post-deprivation process was sufficient to overcome the determination that a material issue of fact exists as to whether the pre-deprivation process was unfair.  In the context of a failure to provide any pre-deprivation process at all, the Second Circuit reasoned, "[A]lthough notice and predeprivation hearing are generally required, the lack of such predeprivation process will not violate due process in certain circumstances provided there is sufficient postdeprivation process available to the person deprived of his property interest."  Kshel Realty Corp., 293 Fed.Appx. at 15;  see also Benavidez v. City of Albuquerque, 101 F.3d 620, 626 (10th Cir. 1996) ("When the pre-termination process offers little or no opportunity for the [individual] to present his side of the case, the procedures in the post-termination hearing become much more important.").  "Generally, '[i]t is sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination.'"  Id.  (quoting Hodel v. Va. Surface Min. and Reclamation Ass'n, Inc., 452 U.S. 264, 303 (1981)).  Mr. Watrous was indeed afforded a postdeprivation forum, albeit one that he did not utilize.  Mr. Watrous does not dispute that he did not appeal the denial of his permit to construct the stairway on December 19, 2006, or the IWWC decisions on June 19, 2007 to confirm that the new residence was in violation of the agency regulations and to attach notice of the violation to the property records.

It seems clear that denials of permit applications and cease and desist orders are contemplated by the statutory appellate process outlined in section 22a-43 of the

Connecticut General Statutes.  "The commissioner or any person aggrieved by any regulation, order, decision or action . . . may . . . appeal to the superior court for the judicial district where the land affected is located."  See Conn. Gen. Stat. § 22a-43; see also Red Eleven, LLC v. Conservation Comm'n, No. CV044001201S, 2007 WL 1297242 (Conn. Super. 2007) (unpublished) (hearing appeal of a wetlands agency appeal of a cease and desist order); Litchfield County Homes, LLC v. Morris Conservation Comm'n Inland Wetlands Agency, No. LLICV064005384S, 2007 WL 4414476 (Conn. Super. 2007) (unpublished) (hearing appeal of denial of an inland wetlands permit).  The full IWWC voted on the regulatory violations on the property, the decision to attach the violation to the land records (which is the actual source of the injury of which Mr. Watrous complains), and the denial of the IWWC permit.  Mr. Watrous did not avail himself of the statutory appeals process afforded to him.  See Atencio v. Bd. of Educ., 658 F.2d 774, 781 (10th Cir. 1981) ("[The Due Process] Clause, however, has been adhered to in our opinion since Atencio was afforded a Local Board hearing for presentation of his evidence and assertion of his claim of denial of the state conference procedures, and since he has an appellate procedure therefor as well.  His federal due process rights are not infringed and he may pursue his state law claims before the State Board and state courts."); see also Santana v. Costello, No. 96 CIV. 4716 (DLC), 1998 WL 107019, *3 (S.D.N.Y. 1998) ("Santana had the opportunity to raise his claim that the People violated Section 710.30 on his direct appeal.  Having been afforded a state forum in which to vindicate his rights, Santana does not have a cognizable procedural due process claim for the alleged violation of Section 710.30.").  Because he did not make use of this forum, the court cannot say whether this process

was constitutionally deficient.  Accordingly, the court finds Mr. Watrous' failure to avail himself of any state appellate process of the IWWC's decisions to be fatal to his procedural due process claim.  See Brady, 863 F.2d at 211.

C. Substantive Due Process

The defendants also seek summary judgment as to Mr. Watrous' substantive due process claim.  To show a violation of substantive due process rights, Mr. Watrous must show (1) that he "had a valid property interest," and (2) the "defendants infringed on that property right in an arbitrary or irrational manner." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 784 (2d Cir. 2007); see Harlen Assocs. v. Incorp. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).

The court has already concluded that summary judgment is inappropriate as to the first prong of this test.  See, supra, IV.B.1.  Thus, the court now considers whether the defendants' actions infringed on that property right in an arbitrary or irrational manner.[5]

To establish a substantive due process violation in the context of a land use decision, a plaintiff "must show that the [defendant's] alleged acts against their land were 'arbitrary,' 'conscious-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'" Ferran v. Town of Nassau, 471 F.3d 363, 369-70 (2d Cir. 2006) (citation omitted).  Violation of the substantive standards of the Due Process

---

[5] In this court's Ruling on Defendants' Motion for Reconsideration of their Motion to Dismiss (Doc. No. 93), this court considered and rejected defendants' claim that this court committed clear error by not applying a supposedly higher "shocks the conscience" standard to procedural due process claims in accordance with County of Sacramento v. Lewis, 523 U.S. 833 (1988).  The court notes that the Second Circuit has upheld the Cine SK8 standard on at least three separate occasions, all since the Supreme Court's decision in Lewis.  See O'Mara v. Town of Wappinger, 485 F.3d 693, 699 (2d Cir. 2007); Clubside, Inc. v. Valentin, 468 F.3d 144, 152 (2d Cir. 2006); Harlen Assocs. v. Incorp. Vill. of Mineola, 273 F.3d 494, 503 (2d Cir. 2001).

Clause requires "conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale, 170 F.3d at 259.

The court is mindful that the Fourteenth Amendment is not a "font of tort law." Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)).  "It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." Pena, 432 F.3d at 112.  Moreover, federal courts "should not become zoning boards of appeal to review nonconstitutional land use determinations by the Circuit's many local legislative and administrative agencies."  Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996) (quoting Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995)); see Harlan Associates, 273 F.3d at 505.

"[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" and therefore support a substantive due process claim.  Lewis, 523 U.S. at 849. Conduct which exceeds the authority vested in a government body may also support a substantive due process violation.  "[T]he touchstone of due process is protection of the individual against arbitrary action of government."  Id. at 845 (citation omitted).  If a government body or official "did not have authority for the actions it took regarding" a plaintiff's property, such "actions were ultra vires and, as a result sufficiently arbitrary to amount to a substantive due process violation."  Cine SK8, Inc., 507 F.3d at 789.

The Individual Defendants essentially argue that their conduct related to Mr. Watrous simply does not rise to the level of arbitrary, irrational, or conscious-shocking action sufficient to sustain a claim for a violation of Mr. Watrous' substantive due

process rights.  See Defs.' Memo. Supp. Mot. Summ. J. Indiv. Defs. at 25 ("Based upon

. . . reasonable belief, the Individual Defendants acted to enforce the IWWC's

jurisdiction.  This is both a rational and non-arbitrary rationale for the Individual

Defendants' actions.  Those actions are exactly the type of actions which could be

remedied in a state court action (administrative appeal) and which do not come close to

rising to the level of 'conscious shocking' conduct.") (quoting Natale, 170 F.3d at 163).

The Individual Defendants point to their affidavits, which universally state that they did

not act to intentionally deprive Mr. Watrous of his rights and were acting within what

they believed to be the scope of their employment and in furtherance of their official

roles.  See Defs.' 56(a)1, Ex. A at ¶ 104-11; Ex. B at ¶ 30-38; Ex. C at ¶ 30-38; Ex. D at

¶ 11-17.

        At the outset, the court notes that the Second Circuit has strongly suggested that

actions taken without authority under state law, such as when a board lacks jurisdiction

over property, give rise to a conclusion that the state entity lacked a rational basis for

their actions, and that such actions violate substantive due process.  See Brady, 863

F.2d at 216 (holding that where a zoning board had no authority under state law to take

certain actions with respect to a protected property interest a "trier of fact could

conclude that there was no rational basis for the [Town's zoning board's] actions, and

that, as a result, the [zoning board] violated appellants' rights to substantive due

process."); see also Cine SK8, 507 F.3d at 789 ("[I]f the Town Board did not have

authority for the actions it took regarding Fun Quest's permit -- as it appears it did not --

the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a

substantive due process violation."); TZ Manor, LLC v. Daines, 815 F. Supp. 2d 726,

745 (S.D.N.Y. Sept. 27, 2011) ("Cine SK8 can be read broadly to stand for the proposition that any governmental action taken outside the scope of the defendant's authority, i.e., an 'ultra vires' act, is 'sufficiently arbitrary to amount to a substantive due process violation.'") (quoting Cine SK8, 507 F.3d at 789).

While the absence of IWWC jurisdiction alone might be sufficient to deny the Individual Defendants' summary judgment on Mr. Watrous' substantive due process claim under Cine SK8, Mr. Watrous has proffered additional evidence to support such a denial.  Most prominently, Mr. Watrous has offered evidence that Mr. Congdon's visual inspection of Mr. Watrous' property took place after the prior structure had been demolished, leaving no reference point for Mr. Congdon to find support for a violation, and that performance of such inspections was not part of Mr. Congdon's job or within his area of expertise, allegations that raise the inference of arbitrary action.

Mr. Watrous also offers evidence that Mr. Congdon and Mr. Bobbin appeared together in front of the IWWC in support of Bobbin and in opposition to Watrous.  This, combined with the undisputed fact that Mr. Bobbin also engaged the IWWC approval process at the same time and found a speedier resolution of his issues, also prevents the court from determining -- when all inferences are drawn in Mr. Watrous' favor -- that the court can as a matter of law determine that Mr. Watrous' substantive due process rights were not violated.  Such facts also support the inference that the Individual Defendants' actions were motivated in part by personal animus and an intent to injure Mr. Watrous.

Other courts in the Second Circuit have denied summary judgment on substantive due process claims based on reasonably similar scenarios.  See Media

Alliance, Inc. v. Mirch, No. 1:09-CV-0659, 2011 WL 3328532, *11 (N.D.N.Y. August 2, 2011) (finding that two unannounced inspections, including one performed weeks after the plaintiff criticized the Mayor, gave rise to "an issue of fact with respect to whether defendants acted arbitrarily and irrationally."); Sloup v. Loeffler, No. 05-CV-1766, 2008 WL 3978208, *14 (E.D.N.Y. August 21, 2008) (denying summary judgment in part because defendants lacked legal authority to regulate the plaintiff's commercial fishing business and in part based on a conclusion that "a rational jury could find that -- on the basis of personal animosity towards Sloup -- defendants knowingly and intentionally subjected plaintiff (and only plaintiff) to a legally unfounded, blanket geographical prohibition from fishing in all of the harbor areas of Islip, despite defendant's knowledge that defendants were not legally authorized to regulate fishing").

The Individual Defendants argue that, because they did have a rational belief that they indeed had jurisdiction over the Property, their actions cannot be said to be arbitrary and irrational.  Drawing all inferences in favor of Mr. Watrous, however, the court concludes there is a material issue of fact over the good faith of the Individual Defendants in persisting with claims to jurisdiction even after the DEP stated that it had jurisdiction, and in crediting Mr. Congdon's inspection despite the lack of a reference for such an inspection.  These factual disputes, in addition to those described above, make summary judgment inappropriate because a reasonable jury could find the actions of the Individual Defendants arbitrary and irrational.

D. Conspiracy

The Individual Defendants next move for summary judgment based on Mr. Watrous' conspiracy claim brought under section 1983.

40

"To establish a conspiracy under § 1983, a plaintiff must prove either by direct or circumstantial evidence (1) the existence of an agreement between two or more state actors (or a state actor and a private entity) (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal." Phoenix v. Reddish, 175 F. Supp. 2d 215, 218 (D. Conn. April 19, 2011) (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

The Individual Defendants argue that Mr. Watrous' assertions regarding a conspiracy are conclusory allegations insufficient to survive summary judgment and note that the Individual Defendants have all set forth in their affidavits that no such conspiracy existed. See Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993) (finding for defendants on summary judgment where "allegations are unsupported by any specifics, and many of them are flatly contradicted by the evidence proffered by defendants.").

As discussed earlier, however, such evidence does exist sufficient to raise disputed issues of material facts. Mr. Congdon is alleged to have spoken before the IWWC in support of Mr. Bobbin, who brought issues with Mr. Watrous' property to the IWWC's attention. It was also Mr. Congdon who conducted the visual site inspection of Mr. Watrous' property despite, as Mr. Watrous has presented evidence showing, a lack of reference for such inspection, and despite the fact that Mr. Congdon did not normally perform such inspections. The other members of the IWWC voted to sustain notices of violation and cease and desist orders based upon this inspection despite minimal input from Mr. Watrous and challenges to both the existence of the IWWC's jurisdiction and the sufficiency of Mr. Congdon's inspection. Further, there is documentary evidence that the members of the IWWC acted specifically to ensure that Mr. Watrous could not

resell his property.  Whether such facts are found by a jury as sufficient to sustain a conspiracy claim is another matter entirely.  At this stage, the court cannot say that no disputed issues of material fact exist sufficient to establish a conspiracy claim under section 1983.

The Individual Defendants, however, next argue that summary judgment is appropriate because of the Intra-corporate Conspiracy Doctrine, which posits that "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."  Rodriguez v. City of New York, 644 F. Supp. 2d 168, 200 (E.D.N.Y. 2008) (citing Farbstein v. Hicksville Pub. Library, 254 Fed.Appx. 50, 51 (2d Cir. 2007).  The intracorporate conspiracy doctrine has been held to apply to section 1983 claims.  See Appel v. Spiridon, No. 3:06-CV-1237, 2011 WL 3651353, *19 (D. Conn. Aug. 18, 2011) ("Numerous district courts of this circuit, however, have consistently determined that the doctrine applies to section 1983 claims.  Accordingly, I hold that in the absence of controlling contrary authority, the intracorporate conspiracy doctrine applies to section 1983 claims.") (internal citations omitted).

There is, however, an exception to the Intra-corporate Conspiracy Doctrine that "applies to individuals within a single entity when they are pursing personal interests wholly separate and apart from the entity."  Tardd v. Brookhaven Nat'l Laboratory, 407 F.Supp.2d 404, 414 (E.D.N.Y. January 7, 2006); see also Bhatia v. Yale Univ., No. 3:06-CV-1769, 2007 WL 2904205, *2 (D. Conn. Sept. 30, 2007).  Here, Mr. Watrous presents some evidence of personal animus or personal interest on the part of, at the very least, Mr. Congdon, and a material issue of fact exists as to whether personal bias

may be inferred as to each of the other Individual Defendants from their acceptance of Mr. Congdon's reference-less visual inspection and their speedier, differential treatment of Mr. Bobbin's violation issue.

It remains unclear, however, exactly what Mr. Watrous asserts as the "personal interest" at stake for the other alleged co-conspirators. See Tardd, 407 F.Supp.2d at 414 ("[W]hether the exception applies in this case depends on whether each and every defendant is alleged to have been motivated by a personal interest in carrying out the alleged discrimination."). Some courts have found that personal bias, by itself, is not the same as having a personal interest. See Johnson v. Nyack Hosp., 954 F. Supp. 717, 723 (S.D.N.Y. 1997) ("[P]ersonal bias is not the sort of personal interest that takes a defendant out of the intraenterprise conspiracy doctrine where, as here, the action complained of arguably served a legitimate interest of Nyack Hospital."); see also Bond v. Bd. of Educ. of City of New York, No. 97CV1337, 1999 WL 151702, *2 (E.D.N.Y. 1999) ("Although the complaint includes an allegation that Rodriguez-Torres wanted to 'get rid of' plaintiff, personal bias does not constitute personal interest and is not sufficient to defeat the intracorporate conspiracy doctrine."). Here, no evidence has been produced to suggest any personal interest that motivated the IWWC-linked co-conspirators. Because of these reasons, and because Mr. Congdon cannot have conspired with himself, the Intra-corporate Conspiracy Doctrine bars Mr. Watrous' conspiracy claim.

Mr. Watrous, however, raises a somewhat different objection. He argues that the Individual Defendants, who are all employees of the Town, cannot be said to have acted within the scope of their employment and thus fall outside of the strictures of the Intra-

43

corporate Conspiracy Doctrine because they lacked jurisdiction to act in the first instance.  See Pl.'s Memo./Indiv. Defs. at 38.  However, Mr. Watrous cites no authority for this proposition, and the court has found none.  See Lindsey v. Allstate Ins. Co, 34 F. Supp. 2d 636, 645 n. 4 (W.D. Tenn. January 13, 1999) ("The mere fact that an activity is illegal or inappropriate does not, without more, render that activity outside the scope of employment.").  As a result, the court grants the Individual Defendant's summary judgment motion as to Mr. Watrous's conspiracy claim under section 1983.

E.  Monell Claim Against Town

The Town moves for summary judgment as to Mr. Watrous' Monell claims against it for liability for the Individual Defendants' actions.

In a suit under section 1983, a municipality may not be held liable on a theory of respondeat superior.  See Monell, 436 U.S. at 694.  "It may, however, be held liable if the conduct that caused the unconstitutional deprivation was taken pursuant to: 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.'" Jeffes v. Barnes, 208 F.3d 49, 56-57 (2d Cir. 2000) (quoting Monell, 436 U.S. at 690-91).  "Where the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved."  Id. at 57.

While the question of whether an individual possesses final policymaking authority is a legal question, "it is incumbent on the plaintiff to establish that element as a matter of law." Id. at 57-58.

Mr. Watrous argues that he "did allege actions by government officials, the first selectman, the inland welands [sic] enforcement agent, the chairmen [sic] of the IWWC and the IWWC whose edicts and acts may fairly be said to represent official policy." See Pl.'s Memo./Town and IWWC at 19.  However, Mr. Watrous' blanket allegation in the absence of any evidence or legal basis to support the conclusion that someone within this group of people did something that can be said to be official policy is insufficient to show, as a matter of law, that any of these actors possessed final policymaking authority for purposes of a Monell claim.  The court is particularly wary of making such a determination without any regulations, charters, or authority establishing who in Preston has final policymaking authority for the specific areas implicated by the actions in this case.  Indeed, Preston does not even have a Town Charter that could serve as an initial roadmap for this court's decision.  See Morris v. Congdon, 277 Conn. 565 (2006) (stating that the Town does not have a Town Charter).  Mr. Watrous presents nothing of this nature.  Without a record, this court refrains from speculating what authority concerning the regulation of inland wetland areas was delegated to which officials within the Town.

The court therefore grants the Town's summary judgment motion as to the claims against it.

F.  Qualified Immunity

Lastly, the Individual Defendants argue they are entitled to qualified immunity as the remaining substantive due process claim against them.  "To allow government officials to perform discretionary duties without fear of undue interference or threat of potentially disabling liability, the law affords them qualified immunity from suits for money damages, provided that conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." Southerland v. City of New York, 681 F.3d 122, 125 (2d Cir. 2012).  "Such immunity has been recognized to provide a broad shield, protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Courts examining claims of qualified immunity first face a threshold question of whether a statutory or constitutional right was violated.  Id.  As discussed earlier, this court finds a question of material fact exists as to whether such a right was violated, so summary judgment on this prong in favor of the Individual Defendants is inappropriate.

Next, the court examines whether the right was clearly established at the time of the defendant's actions.  Id.; see also Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011); Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).  The court is mindful that qualified immunity protects "all

but the plainly incompetent or those who knowingly violate the law."  Malley, 475 U.S. at 341.

The Individual Defendants argue that Mr. Watrous' property interest cannot be deemed "clearly established" because the jurisdiction of the IWWC was a subject of legitimate dispute.  See Natale, 927 F.2d at 105 ("Although the State court's decision in Bogardus held that the Natales did in fact have a right to the permits, at the time Katz acted to block the issuance of the permits, the Natales' entitlement was far from clear."). Here, as discussed above (see IV.B.1, supra), simply because the Individual Defendants were mistaken as to whether Mr. Watrous' property was within IWWC's jurisdiction under state statute does not convert this issue into one of a legitimate dispute.  This court has already determined that this jurisdictional line was "well-established" according to Connecticut law, so Mr. Watrous' property interest to be free of the infringing effects of enforcement action by the IWWC on Mr. Watrous' ability to enjoy and sell his property, cannot be said to be anything other than clearly established. See Pl.'s Mot. Partial Summ. J. at 6.

The Individual Defendants next argue that, even if Mr. Watrous' property right was clearly established, they are entitled to qualified immunity because it was objectively reasonable for them to believe that their actions did not violate that right. See Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir. 2011) ("If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity.") (alterations in original) (internal quotation marks omitted).  "Qualified immunity thus shields government officials from liability when they

make 'reasonable mistakes' about the legality of their actions."  Sudler v. City of New

York, -- F. 3d. --, 2012 WL 3186373, *10 (2d Cir. 2012) (quoting Saucier, 533 U.S. at

206).  This analysis "applies regardless of whether the government official's error is a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

fact."  Pearson, 555 U.S. at 231.

The Individual Defendants argue that the dispute over the IWWC's jurisdiction,

coupled with their reliance on supportive advice from the Town Attorney, renders their

actions objectively reasonable.  See Natale, 927 F.2d at 105 ("Because we believe that

there was a legitimate dispute as to whether the permit applications should have been

granted, we find that Katz acted reasonably.  Consequently, Katz is entitled to qualified

immunity from any liability stemming from actions he took prior to Bogardus."); Taravella

v. Town of Wolcott, 599 F.3d 129, 135 n.3 ("We need not decide whether reliance on

legal advice constitutes an extraordinary circumstance sufficient by itself to give rise to

qualified immunity because at the very least the solicitation of legal advice informs the

reasonableness inquiry.") (internal quotations and citations omitted).

However, this court has already found that disputed material facts exist as to

whether Individual Defendant's actions were arbitrary for both reasons of jurisdiction

and personal animus.  "A finding of arbitrariness not only establishes a due process

violation but precludes a defense of qualified immunity."  TLC Development, Inc. v.

Town of Branford, 855 F. Supp. 555, 558 (D. Conn. 1994) (citing Brady, 863 F.2d at

217) (denying summary judgment on qualified immunity claim because "Here, even

colorably, the commission had no basis for the denial").

This finding applies most clearly to the members of the commission, Mr. Borner and Mr. Moulson, because their decisions had no basis.  Id.  Similar analysis applies to Mr. Johnson, who issued Cease and Desist orders without jurisdictional basis.

As for Mr. Congdon, a qualified immunity determination is inappropriate at this stage because "the objective reasonableness of" his "actions depends at least in part on [his] alleged motivation in dealing with the plaintiff."  Media Alliance, 2011 WL 3328532 at *13, which is a disputed issue of fact.

Accordingly, the court denies the Individual Defendants' Motion for Summary Judgment as to their claim for qualified immunity.

## V.      CONCLUSION

For the reasons stated above, the court grants the Town and IWWC's Motion for Summary Judgment (Doc. No. 117).  The court also grants in part and denies in part the Individual Defendants' Motion for Summary Judgment (Doc. No. 116).  Mr. Watrous may proceed with his claim for a violation of his substantive due process rights against the Individual Defendants.

As stated above, because this Ruling does not implicate Mr. Watrous' claims for unconstitutional taking of his property or violation of his procedural due process rights under the Connecticut Constitution, to the extent they are made.

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of September, 2012.


 _/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge