UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH H. WATROUS, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:10-CV-597 (JCH) |
| v. | : | |
| | : | **JULY 23, 2013** |
| KENT D. BORNER, ET AL., | : | |
| Defendants. | : | |

RULING RE:  DEFENDANTS' MOTION FOR
JUDGMENT AS A MATTER OF LAW (DOC. NO. 169)

## I.   INTRODUCTION

This case involves a cease-and-desist order recorded on a parcel of land (the

"Property") owned by the plaintiff, Kenneth Watrous.  The Property is located at 8

Pequot Street in Preston, Connecticut.  On March 23, 2010, Mr. Watrous filed this suit in

state court against defendants the Town of Preston (the "Town"), the Town of Preston

Inland Wetlands and Watercourses Commission (the "IWWC"), and Kent Borner, John

A. Moulson, Robert M. Congdon, and Leonard Johnson (collectively, the "Individual

Defendants")[1], alleging multiple federal constitutional violations, conspiracy, and a

violation of the Connecticut Antitrust Act.  On April 20, 2010, the defendants removed

the case to federal court.  See Doc. No. 1.

On March 18, 2013, this case proceeded to a jury trial on a single claim—a

substantive due process claim—against the Individual Defendants.  See Doc. No. 150.[2]

---

[1] Borner and Moulson were members of the IWWC, Johnson was the enforcement agent for the
IWWC, and Congdon was the First Selectman of the Town during the time period relevant to this case.

[2] By the time of trial, all claims against the Town and the IWWC had been either withdrawn by Mr.
Watrous or dismissed at the summary judgment stage.  See Ruling on Summary Judgment (Doc. No.
133), and history of case described therein, at pages 1–3, 14–20, 44–45.

The jury returned a verdict in favor of Watrous, awarding compensatory and punitive damages with respect to Individual Defendants Borner, Moulson, and Congdon (collectively, the "Judgment Defendants"), and in favor of Individual Defendant Johnson against Watrous.[3]  See Verdict Form (Doc. No. 161).

The Judgment Defendants now move for judgment as a matter of law.

## II.    BACKGROUND

The jury trial began on March 18, 2013.  The jury heard three days of evidence.  Viewing the evidence "in the light most favorable to [Watrous] and "giving [Watrous] the benefit of all reasonable inferences that the jury might have drawn in his favor," Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998), the evidence at trial showed the following:  Watrous purchased the Property on February 19, 2004, and he applied for and received a variance from the Town Zoning Board of Appeals ("ZBA") to remove the existing house and build a new house on the Property.  Exs. 1, 4.  Watrous submitted an application to the IWWC for a permit on October 6, 2004, and the IWWC unanimously approved the permit on November 16, 2004.  Exs. 2, 3; Moulson Tr. at 3.  Minutes from the IWWC's November 16, 2004 meeting stated, prior to approving the permit, that "Mr. Watrous confirmed that the new house would not be any closer to Poquetanuck Cove than the current house."  Ex. 3.

Watrous proceeded to demolish the old house and construct the new house.  The Town Building Department conducted inspections on June 8, 2005 and June 16, 2005, verifying the locations of the footings and foundation.  Exs. 5, 6.  On February 1,

---

[3] Subsequently and in response to a Motion filed by Watrous, the court entered a Ruling and Order granting injunctive relief to Watrous.  See Ruling (Doc. No. 168).

2006, the Town Planning & Zoning Commission certified that Watrous' new house "conforms to the Approved Site Plan as required by the Preston Zoning Regulations." Ex. 7. On February 15, 2006, the Town issued a Certificate of Occupancy to Watrous. Ex. 8.

After Watrous received his Certificate of Occupancy, David Bobbin, Watrous' neighbor, made several complaints to Congdon, Borner, and others, alleging that Watrous was in violation of various Town building, zoning, and wetlands laws. Exs. 41–46, 49–51. Bobbin specifically alleged that Watrous built his house closer to Poquetanuck Cove than the old house was. See Ex. 41 at 1; Ex. 45 at 1–2; Ex. 49 at 1. On June 20, 2006, Bobbin attended an IWWC meeting and alleged that Watrous built a stairway without a permit, that he did not build his house according to the variance he had been granted, and that he built his house closer to the water than the old house.[4] Ex. 9 ¶ 11.

On or about June 23, 2006, Johnson sent a Notice of Violation to Watrous on behalf of the IWWC, informing Watrous that a stairway he was constructing without a permit violated Town wetlands regulations. Ex. 10. At trial, Moulson testified that other houses near Poquetanuck Cove had stairways for which their owners did not have permits. Moulson Tr. at 52. Moulson also testified that, since at least 1993, when Moulson joined the IWWC, Watrous was the only person who had ever received a Notice of Violation for a stairway to the water on Poquetanuck Cove. Id. at 5; see Exs. 72–78.

---

[4] Bobbin followed up on this request in a July 4, 2006 email, in which he also sought to acquire part of an abandoned road bordering his and Watrous' properties. Ex. 43.

On or about July 11, 2006, Johnson served on Watrous a cease-and-desist order regarding the stairway.  The Order directed Watrous to appear before the IWWC.  See Ex. 11.  The meeting was held on July 18, 2006.  Johnson prepared a report in advance of the meeting.  In that report, he noted other alleged violations of Watrous' permit, including "an alleged walk-out basement, . . . [and] the setback from the edge of the slope not being to plan, as well as property line disputes."  He then stated:

> It is probable that Mr. Watrous will be finished with this project before any legal action may be enacted and the property is actively being marketed for sale.  I would suggest that the Town Attorney be contacted to see what action may be taken to delay any sale of this property, which would only pass the burden on to an innocent party.  Copies of all notices and Cease and Desist actions should also be placed in his building file.  I see this violation taking a long time to resolve and we shouldn't let him pass the burden on to someone else.

Ex. 88.

On July 18, 2006, Watrous appeared before the IWWC and agreed to file an application with the IWWC for a permit to build a stairway.  Ex. 11 at 5.  On July 20, 2006, Watrous filed the application with the IWWC.  Ex. 13.  On July 26, 2006, counsel for Watrous sent Congdon a letter addressing Bobbin's complaints regarding the Property.  See Ex. 80 at 1.  Counsel informed Congdon that the home Watrous built on the Property "was built on a foundation that was located at the proper location by transit" and that "the Town, through Kathy LaCombe, twice inspected the location of the foundation to determine that it was properly located before further work was done on the property."  Id.  Counsel also attached to the letter Johnson's report (Ex. 88) and stated disapproval with the fact that Johnson would take Bobbin's allegations at face value and recommend legal action against Watrous based on those allegations.  Id.  Counsel also

4

stated its intent to hold the Town "fully responsible" for any actions taken against Watrous pursuant to Bobbin's allegations against the Property.  Id.

On August 15, 2006, Watrous' counsel appeared before the IWWC and asserted that Poquetanuck Cove was subject to the Connecticut Department of Environmental Protection (the "DEP") rather than the IWWC.  Ex. 14 at 4.  The minutes for that meeting indicate that Borner intended to obtain a legal opinion from the Town Attorney and a written opinion from the DEP.  Id.

On September 19, 2006, Watrous' counsel again appeared before the IWWC. Borner stated that the Town Attorney, Congdon, and the head of Wetlands Management agreed that the IWWC had jurisdiction over the Property.  Ex. 15 at 2. Borner asserted that IWWC regulations prevented the IWWC from acting on Watrous' application for the stairway if other violations existed on the Property.  Id.  At trial, Moulson testified that no such regulation existed.  Moulson Tr. at 48–49.  Additionally, evidence showed that, on September 15, 2006, Bobbin had raised this issue to Borner in an email, asking whether it was "an acceptable procedure for the [IWWC] to approve an I/W application while there is an unresolved I/W complaint of a violation of a previously approved I/W application on the same property."  Ex. 51 at 1.

Borner then noted that there existed a possible violation regarding the location of the house, and that the IWWC would need verification that the work was built according to approved site plans.  Ex. 15 at 2–3.  The IWWC then voted to schedule a public hearing on October 18, 2013, to discuss Watrous' stairway application, subject to cancelation upon verification of a second violation or if Watrous refused to permit Johnson to conduct a "site walk" on the Property.  Id. at 3.

5

On October 13, 2006, Johnson sent Watrous a Notice of Violation that stated:

> At the direction of Mr. Kent D. Borner, Preston Inland Wetlands and Watercourses Commission (IWWC) Chairman, you are being issued this Notice of Violation.   During a visual inspection done by Mr. Robert Congdon, Preston First Selectman, it was determined that your house at 8 Pequot Street appears to be located in conflict with the requirements of the Inland Wetlands and Watercourses regulations.   This matter will be further addressed at the next scheduled IWWC meeting.

Ex. 16.  At trial, Moulson testified that he could not recall the IWWC having ever issued a Notice of Violation to anyone else based on a site inspection by Congdon, and that doing so was "irregular."  Moulson Tr. at 30–31.

On October 17, 2006, the IWWC canceled the public hearing on Watrous' stairway application on the basis that the location of the house constituted a second violation.  Id. at 52.  At trial, Moulson testified that there was no regulation instructing the IWWC to cancel a public hearing after providing someone notice of the appearance of a violation.  Id. at 50.  The IWWC never acted on Watrous' stairway application, which application the IWWC told Watrous to file.

Between November 13, 2006 and July 10, 2007, Johnson sent five cease-and-desist orders to Watrous.  See Exs. 19, 23–26.  These orders stated that they were sent with respect to "potential violations" of IWWC regulations, including the building of the stairway and the location of the new house.  At trial, Moulson testified that, at the time these orders were sent, the IWWC did not know whether in fact any violations of IWWC regulations existed on the Property.  Moulson Tr. at 37–38; see Borner Tr. at 26 (answering, when asked why the IWWC issued cease-and-desist orders if the language of those orders make apparent that the IWWC is unsure whether a violation exists, "That's why we issue a Cease and Desist.").

6

On November 21, 2006, Watrous' counsel appeared before the IWWC. According to the minutes from that meeting, Watrous' counsel stated he had copies of the site plans for the Property, which would clarify some issues regarding the Property. Borner stated that Watrous' application had pending violations and that no discussion regarding the Property would be permitted until the violations were addressed.  Ex. 20 at 2.  Later during that meeting, counsel stated that the Town had issued Watrous a Certificate of Occupancy verifying that the new house was built according to plan.  He also stated that, since the old house was no longer on the Property, Congdon's visual survey of the location of the new house on the Property lacked a point of reference for, and was an inadequate means of, determining whether the location of the house was built to plan.  Id. at 7.  Borner stated that the IWWC would conduct a survey of the Property and, if Watrous did not permit this, the Town Attorney would proceed with legal action.  Id.

On December 19, 2006, the IWWC voted to reject Watrous' stairway application due to the outstanding violation regarding the location of the new house.  Ex. 21 at 2; Ex. 22.

On September 10, 2007, Congdon and Bobbin appeared before the ZBA to discuss Bobbin's allegations against Watrous and the Property.  Bobbin told the ZBA that the IWWC was only concerned with one criteria:  that the new house is not any closer to the cove than the old house.  Ex. 246 at 2.  Chairman Brown asked whether the ZBA could place a cease-and-desist order on the Property without a survey plan to force Watrous to prove that the new house is in the correct location.  The Town Attorney responded that the ZBA would bear the burden.  Id.  Congdon then asked whether the

Town could place a cease-and-desist notice on the Property's land records in case Watrous tried to sell it.  The Town Attorney responded that he did not think so, but he would confirm that.  Id.  Congdon stated that, even without a survey, a visual inspection was sufficient to create doubt as to whether the new house was the same distance from Poquetanuck Cove than was the old house.  Id.

On September 12, 2007, a Notice of Cease and Desist Order, signed by Borner, was recorded on the Property in the Town's land records.  See Ex. 30.  At trial, Moulson testified that he was aware that recording the Notice on the Property would make it difficult for Watrous to sell the Property.  Moulson Tr. at 39.  He also stated that, at the time the Notice was recorded, the IWWC was not certain that Watrous had violated any IWWC regulations.  Id. at 38–39.

On June 16, 2009, Watrous appeared before the IWWC and presented an A-2 survey of the Property that had been prepared by Angus McDonald and others.  See Ex. 34 at 3; Ex. 33 (survey).  Watrous stated that the survey showed that the old house was closer to the water than the new house.  Ex. 34 at 3.  Borner stated that, although the survey may confirm the location of the existing house, the IWWC "believes" that the house was not built according to the site plan.  Id.  He asked whether Watrous would permit an independent engineer to confirm that the location of the current house conforms to the site plan, at the Town's cost, and Watrous agreed.  Id. at 3–4.  At trial, Angus McDonald testified that the current house is located where it was on the approved site plan.  McDonald Tr. at 21.  McDonald also testified that the plan did not accurately represent the location of a street near the Property and the beach line near Poquetanuck Cove.  Thus, someone standing near the Property and looking at the plan

8

could be given the impression that the location of the house is closer to the water "than it is in reality." Id. at 21, 41–42 ("Q: So the map is incorrect by 21 feet on that dimension [near the water]? A: Yes."). McDonald also testified that his survey remedied that problem by correctly locating the water's edge. Id. at 13.

At this same meeting, Watrous stated that, according to the DEP, the IWWC does not have jurisdiction over the stairway on the Property. Borner stated that, according to the Town Attorney, the IWWC had jurisdiction because the steps were within 100 feet from the high water line. Id. at 4.

At the IWWC's direction, CLA Engineers, Inc. produced a report, dated August 14, 2009, which stated that Watrous' house was "reasonably placed on the lot in accordance with" the site plan. Ex. 35 at 1; see also Moulson Tr. at 19–20. The report also stated that the house was located "about 12 feet closer to the approximate Poquetanuck Cove shoreline . . . than indicated on the approved plan." Ex. 35 at 2. The report did not state whether the existing house was closer to Poquetanuck Cove than the original house. See generally Ex. 35.

On October 20, 2009, Watrous' counsel sent a letter to Moulson and the Town Attorney. See Ex. 86. The letter stated that the IWWC refused to provide Watrous a hearing on his stairway application because Mr. Bobbin alleged that additional violations existed on the Property. Id. at 1. The letter referenced and attached the CLA Engineers report and the IWWC's November 16, 2004 minutes and stated that there was no evidence that the existing house was closer to Poquetanuck Cove than the original house. Id. at 1–2. Accordingly, Watrous' counsel requested the removal of the cease-and-desist from the Property. Id. at 2. That same day, the IWWC held a special

9

meeting.  <u>See</u> Ex. 38.  The IWWC voted to recommend to the Board of Selectmen to authorize and fund a lawsuit against Watrous regarding the Property.  <u>Id.</u> at 1.  No such suit was filed.

## III.   STANDARD OF REVIEW

Rule 50(b) of the Federal Rules of Civil Procedure allows for the entry of judgment as a matter of law "if a jury returns a verdict for which there is not a legally sufficient evidentiary basis."  <u>This Is Me, Inc. v. Taylor</u>, 157 F.3d 139, 142 (2d Cir. 1998) (citing Fed. R. Civ. P. 50).  The standard under Rule 50 is the same as that for summary judgment:  a court may not grant a Rule 50 motion "unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable persons could have reached."  <u>This Is Me, Inc.</u>, 157 F.3d at 142 (alterations, citation, and internal quotation marks omitted).

A movant's burden under Rule 50 is "particularly heavy where, as here, the jury has deliberated in the case and has actually returned its verdict in favor of the non-movant."  <u>Cash v. Cnty. of Erie</u>, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted) (citing <u>Cross v. N.Y.C. Transit Auth.</u>, 417 F.3d 241, 248 (2d Cir. 2005)); <u>see</u> <u>also</u> <u>Norton</u>, 145 F.3d at 118 ("A party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden.").  In such cases, "the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of the witnesses or consider the weight of the evidence."  <u>Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.</u>, 136 F.3d 276, 289 (2d Cir. 1998) (citations omitted).  In short, the court cannot "substitute its judgment for that

of the jury." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (citations omitted). Rather, judgment as a matter of law may only be granted where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Meloff v. N.Y. Life Ins. Co., 240 F.3d 138, 145 (2d Cir. 2001) (alterations omitted) (quoting Galdieri-Ambrosini, 136 F.3d at 289); see also Millea v. Metro–N. R.R. Co., 658 F.3d 154, 161 (2d Cir. 2011) (quoting Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154 (2d Cir. 1994)).

Moreover, "weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that 'a reasonable juror would have been compelled to accept the view of the moving party.'" This Is Me, Inc., 157 F.3d at 142 (quoting Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993)). The court "must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor." Norton, 145 F.3d at 118; see also Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (stating that court must draw all reasonable inferences in favor of the non-moving party). Additionally, in making its determination, the court "'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" Mickle, 297 F.3d at 120 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000)). Accordingly, Rule 50 motions "should be granted cautiously and sparingly." Meloff, 240 F.3d at 145 (internal

quotation marks omitted) (quoting 9A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2524, at 252 (1995)).

IV.   **DISCUSSION**

The Judgment Defendants argue that judgment as a matter of law is appropriate on two main grounds.  First, they argue that the evidence presented at trial cannot support the conclusion that the Judgment Defendants violated Watrous' right to substantive due process.  <u>See</u> Defs.' Mem. in Support of Mot. for J. as a Matter of Law ("Defs.' JMOL ") at 6–18.  Second, they argue that the Judgment Defendants are entitled to qualified immunity.  <u>See</u> Defs.' JMOL at 18–28.  The court addresses these arguments in turn.

A.   <u>Substantive Due Process</u>

To prove a violation of substantive due process rights, Watrous was required to show that (1) he "had a valid property interest," and (2) the "defendants infringed on that property right in an arbitrary or irrational manner."  <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 784 (2d Cir. 2007); <u>see Harlen Assocs. v. Incorp. Vill. of Mineola</u>, 273 F.3d 494, 503 (2d Cir. 2001).[5]  To establish a substantive due process violation with respect to a land use issue, a plaintiff "must show that the [defendant's] alleged acts against their land were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised.'"  <u>Ferran v. Town of Nassau</u>, 471 F.3d 363, 369–70 (2d Cir. 2006) (citation omitted).  A violation of substantive due process requires "conduct that is so outrageously arbitrary as to constitute a gross

_____

[5] The Judgment Defendants do not appear to argue that the court instructed the jury incorrectly on the law.

abuse of governmental authority."  Natale v. Town of Ridgefield, 170 F.3d 258, 259 (2d Cir. 1999).

At trial, there was no dispute that Watrous had a "valid property interest in his already-granted permits and approvals from various Preston authorities, as well as a property interest in the enjoyment and use of his property."  Jury Charge (Doc. No. 162) at 20.  Accordingly, the remaining issue is whether the "one conclusion as to the verdict that reasonable persons could have reached" is that the Judgment Defendants did not infringe on Watrous' property right in an arbitrary or irrational manner. See This Is Me, Inc., 157 F.3d at 142.

"[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" and therefore support a substantive due process claim.  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).  However, conduct that exceeds the authority vested in a government body may also support a substantive due process violation.  "[T]he touchstone of due process is protection of the individual against arbitrary action of government."  Id. at 845 (citation omitted).  For example, the Second Circuit has held that, where a town board "did not have authority for the actions it took regarding" a plaintiff's property, such "actions were ultra vires and, as a result sufficiently arbitrary to amount to a substantive due process violation."  Cine SK8, Inc., 507 F.3d at 789.  The court reasoned that government action "tainted with fundamental procedural irregularity . . . qualifies as arbitrary or irrational and hence as a violation of a plaintiff's substantive due process rights (provided it affects a valid property interest."  Id. (internal quotation marks omitted) (quoting Natale, 170 F.3d at 262).  The Second Circuit has noted that

actions taken without authority under state law, such as when a board lacks jurisdiction over property, may give rise to a trier of fact's conclusion that such actions violate substantive due process.  See Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (holding that "a trier of fact could conclude that" there was "no rational basis" for a zoning board's revocation of a landowner's building permit, where the board lacked authority under state law for such revocation).

Here, the jury returned a verdict in favor of Watrous, finding that the Judgment Defendants violated his constitutional right to substantive due process.  The Judgment Defendants argue that their exercise of jurisdiction over the Property is insufficient to rise to the level of a substantive due process violation.  Defs.' JMOL at 9.  However, the court cannot conclude, viewing the evidence in the light most favorable to Watrous and giving Watrous the benefit of all reasonable inferences the jury might have drawn in his favor, see Norton, 145 F.3d at 118, either that there was a complete absence of evidence supporting the jury's verdict or that reasonable and fair-minded persons could not arrive at a verdict against the Judgment Defendants, see Meloff, 240 F.3d at 145.

First, the court previously determined, and subsequently charged the jury, that the IWWC lacked jurisdiction over the Property when it acted with respect to the Property.  See Ruling on Partial Summ. J. (Doc. No. 74) at 12; Ruling on Summ. J. (Doc. No. 133) at 36–40; Jury Charge at 21 ("I instruct you that this court has determined . . . that the [IWWC] did not have jurisdiction over the [Property] at any time, including during the times of the events in this case.").  The court also instructed the jury that the fact that a defendant acted outside his jurisdiction could serve as a basis for a finding that a defendant acted in an arbitrary or irrational manner.  Id. at 21.

14

The Judgment Defendants argue that Brady is distinguishable because the governmental entity there acted with political animus.  Defs.' JMOL at 9.  However, Brady does not require a finding of political animus.  It merely states that an action of a governmental body, taken without jurisdiction, is sufficient to make out a substantive due process violation if such actions were taken "because of indefensible reasons such as impermissible political animus."  Brady, 863 F.2d at 216 (emphasis added). Moreover, the facts here before the jury could support a finding that the Judgment Defendants' actions were indefensible.  The jury was provided with evidence that Bobbin and Congdon appeared before the IWWC in support of Bobbin and in opposition to Watrous, and that the IWWC took action with respect to Bobbin's various allegations against Watrous.  The jury was also provided with evidence that the IWWC denied Watrous a hearing on his stairway application, citing a regulation—the existence of a second violation on the Property—that Moulson testified was not actually an IWWC regulation.  The jury was also presented with testimony from Moulson stating that he could not recall the IWWC having ever issued a Notice of Violation to anyone else based on a site inspection by Congdon, and that doing so was irregular.

The Judgment Defendants also argue that Cine SK8 is distinguishable because the town board there "undertook actions which the Code it operated pursuant to did not permit, [while] the [Judgment Defendants] in this case undertook actions which were explicitly allowed under their regulations."  Defs.' JMOL at 12.  This distinction is unpersuasive.  "Cine SK8 can be read broadly to stand for the proposition that any governmental action taken outside the scope of the defendant's authority, i.e., an 'ultra vires' act, is 'sufficiently arbitrary to amount to a substantive due process violation.'"  TZ

15

Manor, LLC v. Daines, 815 F. Supp. 2d 726, 745 (S.D.N.Y. 2011) (quoting Cine SK8,

507 F.3d at 789).  Although there is evidence that the Town Attorney and a staff

member of the DEP told the IWWC that it had jurisdiction over the property, there is also

evidence that Watrous' counsel told the IWWC that, according to the DEP, the IWWC

lacked jurisdiction over the Property.  Moreover,

> simply because the Individual Defendants were mistaken as to whether
> Mr. Watrous' property was within IWWC's jurisdiction under state statute
> does not convert this issue into one of a legitimate dispute.  This court has
> already determined that this jurisdiction line was 'well-established'
> according to Connecticut law, so Mr. Watrous' property interest to be free
> of the infringing effects of enforcement action by the IWWC on Mr.
> Watrous' ability to enjoy and sell his property, cannot be said to be
> anything other than clearly established.

Ruling on Summ. J. at 47 (citing Ruling re Partial Summ. J. at 6).  "If the town lacked

authority to regulate, its actions could constitute a substantive due process violation."

TZ Manor, 815 F. Supp. 2d at 746.  Accordingly, based on the evidence shown at trial, a

reasonable juror would not have been "compelled to accept" the view of the Judgment

Defendants.  This Is Me, Inc., 157 F.3d at 142.

Second, even assuming arguendo that the lack of jurisdiction alone is insufficient

to support a finding of a substantive due process violation, the fact that the IWWC acted

without jurisdiction, in addition to other evidence presented at trial, is sufficient to

support a verdict that the Judgment Defendants' conduct was "so outrageously arbitrary

as to constitute a gross abuse of governmental authority."  See Natale, 170 F.3d at

259.[6]

---

[6] The Judgment Defendants cite several cases in support of their argument that their actions did
not rise to the level of a substantive due process violation.  See Def.'s JMOL at 15–18.  In one case, the
Sixth Circuit concluded that "the solicitation of a bribe by a public official" did not constitute a substantive

2aa8128c5e9329d4

The evidence that this court identified as supporting a finding that the Judgment Defendants' actions were indefensible also supports a finding of outrageously arbitrary conduct. See, supra, page 15. Additionally, Moulson testified that the IWWC did not know whether Watrous had committed any violation with respect to the Property when it issued cease-and-desist orders, when it refused to hold a hearing on the stairway application, and when it placed a Notice of Cease and Desist on the Property in order to make it more difficult for Watrous to sell the Property. This is, by any sense of the word, arbitrary.

Evidence also showed that, at the September 10, 2007 ZBA meeting, Bobbin and Congdon asked the Town Attorney whether it would be possible to issue a cease-and-desist order on the Property to force Watrous to prove that he had built his home in the correct location. After the Town Attorney said that the burden would be on the ZBA, not on Watrous, Congdon asked whether the Town could record a cease-and-desist order on the Town's land records in the event that Watrous attempted to sell the Property.

Evidence also showed that Watrous submitted an A-2 survey of the Property, and that CLA Engineers, Inc., at the IWWC's direction, produced a report stating that Watrous' house was reasonably placed on the lot in accordance with the site plan. Nonetheless, after learning of this, the IWWC voted to file suit against Watrous and

---

due process violation. See EJS Properties, LLC v. City of Toledo, 698 F.3d 845, 862 (6th Cir. 2012). In another, a court held that state police's unauthorized actions enabling a trespass on a citizen's property did not violate substantive due process, in part because executive actors, "as opposed to administrative actors enforcing regulatory regimes," are protected from substantive due process violations unless engaged in particularly "egregious conduct." See Longmoor v. Nilsen, 285 F. Supp. 2d 132, 133, 138 (D. Conn. 2003). None of these cases contain facts similar to those in the instant case, and none of them support a conclusion that the jury's verdict was so unsupported by the evidence at trial that it constituted "sheer surmise and conjecture" or that a reasonable and fair-minded person could not reach that verdict. See Meloff, 240 F.3d at 145.

continued to maintain the cease-and-desist orders on the land records (and yet never filed suit).

This evidence is sufficient to support the jury's conclusion that the Judgment Defendants' actions were outrageously arbitrary and violated Watrous' substantive due process rights. The evidence does not support a conclusion that the jury's findings could only have been the result of sheer surmise and conjecture or that no reasonable or fair-minded person could have arrived at this verdict. See Meloff, 240 F.3d at 145.

B. Qualified Immunity

The Judgment Defendants next argue that they are entitled to qualified immunity as to the substantive due process claim against them. "To allow government official to perform discretionary duties without fear of undue interference or threat of potentially disabling liability, the law affords them qualified immunity from suits for money damages, provided that conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." Southerland v. City of N.Y., 681 F.3d 122, 125 (2d Cir. 2012) (citations omitted). "Such immunity has been recognized to provide a broad shield, protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

A court examining a claim of qualified immunity faces a threshold question of whether a statutory or constitutional right was violated. Id. As the court concluded earlier, see, supra, Part IV.A, there was sufficient evidence for the verdict the jury returned, which found that the Judgment Defendants violated Watrous' right to substantive due process.

18

Next, the court examines whether the right was "clearly established" at the time of the defendant's actions.  Southerland, 681 F.3d at 125; see also Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011); Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

The Judgment Defendants argue that Watrous' property interest[7] "was not 'clearly established' at the time the IWWC exercised jurisdiction of the subject property." Defs.' JMOL at 23.  The Judgment Defendants argue that, when they exerted jurisdiction over the Property, it was reasonable for them to believe that the IWWC's jurisdiction was proper and would not violate Watrous' constitutional rights.  Id. at 24–25 (citing Natale v. Town of Ridgefield, 927 F.2d 101, 105 (2d Cir. 1991)).  The Natale court granted qualified immunity to zoning officials who denied Natale permits in a situation where "the Natales' entitlement was far from clear" and where "there was a legitimate dispute as to whether the permit applications should have been granted." Natale, 927 F.2d at 105.  Here, the court previously rejected the notion that such a legitimate dispute existed, and the court sees no reason in the Judgment Defendants' arguments to warrant a reversal of that determination.  See Ruling  on Summ. J. at 47 ("[S]imply because the Individual Defendants were mistaken as to whether Mr. Watrous' property was within IWWC's jurisdiction under state statute does not convert this issue

---

[7] At the time of trial, the court instructed the jury, and it was undisputed, that Watrous had a "valid property interest in his already-granted permits and approvals from various Preston authorities, as well as a property interest in the enjoyment and use of his property."  Jury Charge at 20.

into one of a legitimate dispute.  This court has already determined that this jurisdiction line was 'well-established' according to Connecticut law, so Mr. Watrous' property interest to be free of the infringing effects of enforcement action by the IWWC on Mr. Watrous' ability to enjoy and sell his property, cannot be said to be anything other than clearly established." (citing Ruling re Partial Summ. J. at 6)).[8]

Alternatively, it was "clearly established" that the IWWC could not take action against Watrous and the Property without a basis to do so.  The IWWC did just that. The evidence shows that the IWWC took several actions against the Property, including issuing several cease-and-desist orders, without knowing or concluding that any such violations existed and based on evidence such as Congdon's visual inspection, which Moulson testified was "irregular."  Moulson Tr. at 30–31.  The IWWC also sent Watrous a Notice of Violation for building a stairway without a permit, even though there were several other nearby property owners who had not also been required to apply for permits for their stairways.  Further, citing a non-existent regulation, the IWWC denied Watrous a hearing on his stairway application.  Finally, even after CLA Engineers, Inc. produced a report to the IWWC stating that Watrous' house was reasonably placed on the lot in accordance with the site plan, the IWWC voted to file suit against Watrous.

The Judgment Defendants argue next that they are entitled to qualified immunity even if Watrous' property right was "clearly established," because it was objectively reasonable for them to believe that their actions did not violate that right at the time that

---

[8] The Partial Motion for Summary Judgment stated that, under well-established Connecticut property law, Poquetanuck Cove "lies outside the territorial limits of the Town of Preston, and the Preston IWWC therefore lacks jurisdiction over [the] Cove.  As a consequence, the Preston IWWC also lacks jurisdiction over any portion of the Property as an 'upland review area' affecting the Cove."  Ruling re Partial Mot. Summ. J. at 6.

they acted.  Defs.' JMOL at 25–28; see Doninger v. Niehoff, 642 F.3d 334, 345 (2d Cir.

2011) ("If the conduct did not violate a clearly established constitutional right, or if it was

objectively reasonable for the official to believe that his conduct did not violate such a

right, then the official is protected by qualified immunity." (alterations, citation, and

internal quotation marks omitted)).

Qualified immunity "shields government official from liability when they make

'reasonable mistakes' about the legality of their actions."  Sudler v. City of N.Y., 689

F.3d 159, 174 (2d Cir. 2012) (quoting Saucier, 533 U.S. at 206)).  This analysis "applies

regardless of whether the government official's error is a mistake of law, a mistake of

fact, or a mistake based on mixed questions of law and fact."  Pearson, 555 U.S. at 231.

The Judgment Defendants argue that it was objectively reasonable for them to act

because they relied on the legal advice of the Town Attorney and information provided

by the DEP.[9]  See Defs.' JMOL at 26–27 (citing Taravella v. Town of Wolcott, 599 F.3d

129, 135 n.3 (2d Cir. 2010) (stating that "the solicitation of legal advice informs the

reasonableness inquiry.")).

First, the Tarvella decision is distinguishable.  There, the official sought advice of

counsel regarding an agreement that was "ambiguous as a matter of law."  Taravella,

599 F.3d at 135.  Here, the court noted that being mistaken as to whether the Property

was under the IWWC's jurisdiction "does not convert this issue into one of a legitimate

dispute," and stated that "Mr. Watrous' property interest to be free of the infringing

_____

[9] The court notes that the evidence showed that a staff member in the DEP sent an email stating
that the IWWC had jurisdiction over upland review areas adjacent to Poquetanuck Cove.  See Ex. 200.
There is no evidence that the DEP itself issued an administrative ruling or other statement confirming the
IWWC's jurisdiction.

effects of enforcement action by the IWWC on Mr. Watrous' ability to enjoy and sell his property, cannot be said to be anything other than clearly established." See Ruling on Summ. J. at 47.  Nothing the Judgment Defendants advance warrants a reversal of the court's prior determination.

Second, "a finding of arbitrariness not only establishes a due process violation but precludes a defense of qualified immunity." TLC Dev., Inc. v. Town of Branford, 855 F. Supp. 555, 558–59 (D. Conn. 1994) (citations omitted) (denying summary judgment on qualified immunity claim where "even colorably, the commission had no basis for the denial"); see also Brady, 863 F.2d at 217 ("It is well settled that enforcement of an otherwise valid zoning ordinance violates the Constitution if the decision of the particular zoning board is arbitrary . . . .  We conclude that the appellees are not entitled to claim the defense of qualified immunity in the event that they are found to have violated the appellants' fourteenth amendment rights." (alterations omitted)).  The jury returned, and this court upheld, a verdict finding that the Judgment Defendants violated Watrous' substantive due process rights.  See Cine SK8, 507 F.3d at 784 (listing, as element of substantive due process claim, that the "defendants infringed on that property right in an arbitrary or irrational manner.").

Third, the evidence from trial does not support a conclusion that it was a reasonable mistake for the Judgment Defendants to believe their conduct did not violate Watrous' clearly established rights.  See Sudler, 689 F.3d at 174.  For example, based on the allegations of Watrous' neighbor Bobbin, Congdon conducted a visual site inspection of the Property.  Moulson testified that having a First Selectmen conduct such an inspection had not been done previously and was "irregular."  Based solely on

that site inspection, Congdon appeared with Bobbin before the IWWC in support of Bobbin and in opposition to Watrous.  Congdon repeatedly attested that, based on his visual inspection, Watrous' house was built closer to Poquetanuck Cove than the old house had been, even though the old house had already been torn down by the time Congdon conducted the inspection.  Congdon also appeared with Bobbin before the ZBA at a September 2007 meeting. At that meeting, he inquired as to whether it was possible to place a cease-and-desist notice on the Property in order to prevent Watrous from selling it.

The evidence showing that the IWWC took action against Watrous despite lacking a basis to do so, see, supra, at 20, is also evidence that it was not objectively reasonable for Moulson and Borner to believe their actions were lawful.

The court concludes that, based on the evidence presented at trial, the Judgment Defendants' conduct violated a clearly established right, involving arbitrary conduct, and it was not objectively reasonable for the Judgment Defendants to believe that their conduct did not violate Watrous' clearly established rights.  Accordingly, the Judgment Defendants are not entitled to qualified immunity with respect to their actions against Watrous.

**V.      CONCLUSION**

For the reasons stated above, the court DENIES the Judgment Defendants'

Motion for Judgment as a Matter of Law (Doc. No. 169).

**SO ORDERED.**

Dated at New Haven, Connecticut this 23th day of July, 2013.


                                        /s/ Janet C. Hall
                                        Janet C. Hall
                                        United States District Judge