UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH H. WATROUS, | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:10-CV-597 (JCH) |
| v. | : | |
| | : | |
| KENT D. BORNER et al., | : | FEBRUARY 5, 2014 |
|     Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR ATTORNEY'S FEES (Doc. No. 174)**

This case concerns a cease-and-desist order recorded on a parcel of land in Preston, Connecticut (the "Property") owned by plaintiff Kenneth H. Watrous. Although other defendants and claims were previously involved in the case, on March 18, 2013, the case proceeded to trial on a single substantive due process claim against four named individuals. On March 22, 2013, the jury found that three of the four—Kent D. Borner, John A. Moulson, and Robert M. Congdon (collectively, the "Judgment defendants")—had violated Watrous's right to substantive due process and awarded him $15,000 in compensatory and punitive damages pursuant to 42 U.S.C. § 1983. See Verdict Form (Doc. No. 161).

Watrous now moves the court to award $214,211.67 in attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons stated below, Watrous's Motion (Doc. No. 174) is **GRANTED**, in the reduced amount of $202,338.29.

**I.   LEGAL STANDARD**

Section 1988 provides that, in a federal civil rights action pursuant to section 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); see also Matusick v. Erie Cnty. Water Auth., No. 11-1234, 2014 WL 30694, at *26 (2d Cir. Jan. 6,

1

2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (citations and internal quotation marks omitted)); LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine, under all the circumstances, what constitutes a reasonable fee, and in appropriate circumstances the court may conclude that, even though a plaintiff has formally prevailed, no award of fees to that plaintiff would be reasonable." (citation and internal quotation marks omitted)).  Section 1988's purpose is to incentivize proper enforcement, via litigation, of the federal civil rights statutes, "not to provide a form of economic relief to improve the financial lot of attorneys."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010).

Under Supreme Court and Second Circuit precedent, the lodestar sum—that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"—is presumptively reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Perdue, 559 U.S. at 554 ("[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."); Matusick v. Erie Cnty. Water Auth., No. 11-1234, 2014 WL 30694, at *26 (2d Cir. Jan. 6, 2014) ("Under prevailing-party statutes such as section 1988, there is a presumption that the lodestar figure represents a reasonable fee.").  This presumption reflects the view that, because the lodestar calculation approximates a lawyer's compensation from a paying client,

such a sum is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue, 559 U.S. at 552. "In light of this presumption, if the court excludes claimed hours from the calculation of the lodestar figure or augments or reduces that figure it must state its reasons for doing so as specifically as possible." LeBlanc-Sternberg, 143 F.3d at 764 (citations, alteration, and internal quotation marks omitted).

## II.   DISCUSSION

The court assumes familiarity with the facts and history of this case, as detailed at greater length in the court's prior Rulings. See Ruling Re: Defs.' Mot. for J. as a Matter of Law (Doc. No. 182) at 1-10; Ruling Re: Pl.'s Mot. to Amend/Correct (Doc. No. 168) at 1-4; Ruling Re: Defs.' Mots. for Summ. J. (Doc. No. 133) at 4-13; Ruling Re: Defs.' Mot. to Dismiss (Doc. No. 90) at 4-10. As to the Judgment defendants, Watrous is undeniably a prevailing party and, therefore, may be awarded reasonable attorney's fees for the time spent by his lawyer, Attorney Edward Moukawsher, in bringing a meritorious civil rights claim. See 42 U.S.C. § 1988(b); Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("[A] plaintiff who wins [even] nominal damages is a prevailing party under § 1988.").

The Judgment defendants argue that Watrous's Motion should be denied in its entirety because it was untimely under Rule 54 of the Federal Rules of Civil Procedure. See Defs.' Opp'n to Pl.'s Mot. ("Defs.' Opp'n") (Doc. No. 181) at 3-5. Alternatively, they argue that the amount should be reduced because of (1) Watrous's limited success in the litigation, id. at 5-6; (2) vague time entries insufficiently describing counsel's work, id. at 6-8; and (3) time entries that include apparently clerical work, id. at 8-9.

3

Upon a careful review of the record, the court determines that this Motion is timely and that an award of $202,338.29 in attorney's fees is fair and reasonably reflects Watrous's degree of success in this case and the work done by counsel to achieve that success. The court has departed downward from the lodestar amount of $214,211.67 on two grounds. First, the court has subtracted $1,225 for two erroneous billing entries. Second, the court has reduced the resulting sum of $212,986.67 by five percent, or $10,649.38, to account for non-legal work that should have been excluded or billed at a lower hourly rate.

### A.   Timeliness of Plaintiff's Rule 54(d)(2)(B) Motion

Rule 54 of the Federal Rules of Civil Procedure provides that a motion for attorney's fees must be filed no later than fourteen days after the entry of judgment, "[u]nless a statute or a court order provides otherwise." Fed. R. Civ. P. 54(d)(2)(B). In this District, the Local Rules extend the deadline to thirty days after the entry of judgment. See D. Conn. L. Civ. R. 11(a); Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 227 (2d Cir. 2004) ("Many jurisdictions have local rules that preempt Rule 54 by allowing fee motions thirty or more days after entry of judgment. . . . Where such rules have been adopted, every circuit that has considered the question has held that such local rules qualify as orders of the court, and hence are an exception to the limitations period in Rule 54." (citations and internal quotation marks omitted)).

The Advisory Committee Notes to Rule 54 explicitly state, "A new period for filing will automatically begin if a new judgment is entered following . . . the granting of a motion under Rule 59." Fed. R. Civ. P. 54. Likewise, the Second Circuit has held that, "because the finality of a judgment is negated by the timely filing of a motion under Rule 50(b), 52(b), or 59, . . . a Rule 54(d)(2)(B) motion is timely if filed no later than 14 days

4

after the resolution of such a Rule 50(b), 52(b), or 59 motion." Weyant v. Okst, 198 F.3d 311, 315 (2d Cir. 1999).  Hence, under Weyant, a party's motion for attorney's fees is timely, unless filed outside the fourteen-day window following the court's last ruling on any pending Rule 50(b), 52(b), or 59 motions—a window which, in this District, is extended to thirty days under Local Rule 11.

Following the jury's verdict, the court entered Judgment (Doc. No. 164) for Watrous on March 25, 2013.  On April 21, pursuant to Rule 59(e), Watrous moved the court to amend the Judgment to include injunctive relief, which Motion (Doc. No. 165) the court granted on April 26.  See Ruling Re: Pl.'s Mot. to Amend/Correct (Doc. No. 168).  The instant Motion for Attorney's Fess was filed on May 26, exactly thirty days after the court granted Watrous's Rule 59 Motion.

Had the Rule 59 Motion been the only motion that undercut the finality of the court's March 25 Judgment, the present Motion for Attorney's Fees would still be timely. It was not the only such motion, however.  On May 3, after Watrous already moved for attorney's fees, the Judgment defendants made a second Motion for Judgment as a Matter of Law (Doc. No. 169) pursuant to Rule 50(b).  Under Weyant, the court's July 23 denial of the Rule 50(b) Motion triggered a new period for filing a Rule 54(d)(B)(2) motion.  Watrous's Motion for Attorney's Fees was filed long before the thirty-day period under Local Rule 11 closed following removal of this last cloud hanging over the finality of the court's judgment.  This Motion is, therefore, timely.

> B.  Reasonableness of Hourly Rate and Total Hours

The lodestar sum of $214,211.67 reflects a rate of $350.00 per hour multiplied by 612.03 hours of documented time spent by counsel, who is a solo practitioner.  See Pl.'s Mot. for Att'y's Fees ("Pl.'s Mot.") (Doc. No. 174) at 8-11; Invoice to Kenneth H.

Watrous ("Watrous Invoice") (Doc. No. 174-1) at 1-16. Although the Judgment defendants raise several specific objections, they do not object to the reasonableness of the hourly rate. Nor do they object that counsel spent an unreasonable or excessive number of hours either on the case as a whole or on specific motions.

Absent objection, the court determines that the hourly rate and total hours are both reasonable. First, based on the court's own knowledge of rates charged in this District, the court has previously found $350 per hour to be what a lawyer who is not a longstanding expert in civil rights litigation could reasonably bill for such a case. See Bolling ex rel Roberts v. Bd. of Educ. of City of Ansonia, No. 3:07-CV-1593 (JCH), 2008 WL 349765, at *3 (D. Conn. Feb. 6, 2008). Second, while the total dollar amount may appear high relative to the damages awarded by the jury, it reasonably reflects the work required to prosecute this case. See Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."). Indeed, the number of hours spent and the corresponding size of the lodestar sum are a function of the vigorous opposition Watrous faced at each stage of the litigation.

      C.     <u>Grounds for Reducing the Lodestar Amount</u>

The Judgment defendants argue for reducing the lodestar amount on three grounds: (1) Watrous achieved only limited success in this litigation; (2) some of the

6

billing entries are vague; and (3) other entries include clerical work.  The second and third grounds have merit.  The first does not.

### 1. Degree of Success

"The most important factor in determining a reasonable fee for a prevailing plaintiff is the degree of success obtained." LeBlanc-Sternberg, 143 F.3d at 760 (citations and internal quotation marks omitted); see also Hensley, 461 U.S. at 436 ("Again, the most critical factor is the degree of success obtained.").  In Hensley, the Supreme Court held that, where a plaintiff prevails on only some of a set of distinct claims based on different facts and legal theories, the district court should reduce the lodestar amount by the hours spent in pursuit of the unsuccessful claims, "treat[ing] those claims] as if they had been raised in separate lawsuits."  461 U.S. at 434-35. However, the Hensley Court noted that, where a plaintiff brings a lawsuit consisting of interrelated claims and wins "substantial relief," the lodestar amount should not be reduced "simply because the district court did not adopt each contention raised." Id. at 440.  In both the more unitary type of case and the type of case that raises discrete unrelated claims, the key factor is the same:  the degree of success achieved by the plaintiff. Id. at 436.

This case is a unitary one involving a common core of facts and interrelated claims.  Despite the relatively small damages awarded by the jury, Watrous obtained "substantial relief."  The relief prayed for was, above all, injunctive, and the court awarded such relief.  See Am. J. (Doc. No. 183).  In all material respects, Watrous achieved the result sought, despite defendants' vigorous opposition throughout the litigation.  Moreover, in the court's view, the resources expended in this litigation were reasonably necessary to overcome that opposition and to vindicate Watrous's claims.

7

See supra Section II.B. Accordingly, the court finds no basis in the degree of success to reduce the lodestar amount.[1]

The Judgment defendants ask the court, in its discretion, (1) to exclude amounts related to Watrous's Motion for Preliminary Injunction, because the court denied that Motion, see Defs.' Opp'n at 5, and (2) to reduce the lodestar sum by seventy-five percent (75%), because Watrous succeeded on only one of his four claims and only against three of the six defendants, see id. at 6. Both arguments are unavailing.

          a.      Motion for Preliminary Injunction

With respect to Watrous's unsuccessful Motion for Preliminary Injunction, counsel's work at this stage was, in the court's view, critical to his ultimate success on the merits.[2] In denying the Motion for Preliminary Injunction, the court took no position on the merits. See Tr. of Telephonic Conference, June 23, 2010 (Doc. No. 42) at 11-13. The court based its decision exclusively on its determination that the possible harm to Watrous during the pendency of the case would be in the form of the Property's

---

[1] As already noted, the mere disproportion between the lodestar amount and the damages award provides no basis in itself for reducing the amount of attorney's fees. See Kassim, 415 F.3d at 252. On the contrary, the Second Circuit has clearly instructed district courts that, at least with respect to federal civil rights cases, a rule requiring proportionality between a fee award and a plaintiff's financial interest in the litigation (based on monetary damages) is inappropriate. Id.

[2] Even absent a final judgment, the entry of an enforceable stay or preliminary injunction may in itself confer prevailing party status "if the court's action in granting the preliminary injunction is governed by its assessment of the merits." Haley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997); see also R.G. ex rel. M.G. v. Minisink Valley Cent. Sch. Dist., 531 F. App'x 76, 79 (2d Cir. 2013) (quoting Haley). However, the court is not aware of any authority in this Circuit for the proposition that, where (as here) a final judgment is reached on the merits, time spent on an unsuccessful motion for preliminary injunction necessarily reduces that party's degree of success in the litigation. Nor have the Judgment defendants pointed the court to any such authority.

As other courts have recognized, counsel's work at the preliminary injunction stage often overlaps to a great extent with work essential to the merits of the underlying case. See, e.g., Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., No. 3:03-CV-599 CFD, 2011 WL 721582, at *7 (D. Conn. Feb. 22, 2011). Thus, counsel's hours spent briefing and developing evidence for a preliminary injunction hearing may be difficult, if not impossible, to distinguish from work that counsel would otherwise have been required to perform in order to prevail in a given case. Id.

potential loss in value and could, therefore, adequately be compensated by damages. Id. However, there is no question that the argument and evidence developed by Attorney Moukawsher for the preliminary injunction hearing distilled the key issues and substantially advanced the litigation. Indeed, it was the court's view at the conclusion of the preliminary injunction hearing that Watrous had demonstrated a likelihood of success on the merits.

Moreover, Watrous's lack of success in achieving injunctive relief was temporary. As already noted, at the conclusion of the trial, the court amended the Judgment to include that relief. See Am. J. In so doing, the court determined that the cease-and-desist orders unconstitutionally recorded on the Property irreparably harmed Watrous by continuing to impair his ability to sell the Property. See Ruling Re: Pl's Mot. to Amend/Correct at 3-4. The time invested at the beginning of this case, albeit on an unsuccessful motion, was critical in achieving that eventual result. Accordingly, an award of attorney's fees that encompasses time spent at the preliminary injunction stage is appropriate, not only because the Motion brought the central issues into focus, developing arguments and evidence reused at the summary judgment and trial stages, but also because Watrous's entitlement to injunctive relief was ultimately vindicated.

b.  Unsuccessful Claims and Other Defendants

With respect to Watrous's unsuccessful claims and the other (non-Judgment) defendants, the court has stressed the unitary nature of this case. That Watrous did not succeed on every theory or obtain damages against each defendant is not sufficient reason to reduce the lodestar amount, where, as here, constitutional claims are involved, substantial relief was awarded, and the resources expended were reasonable under the circumstances to secure that relief. See Kassim, 415 F.3d at 252.

In sum, the degree of success achieved by Watrous warrants a full award of the lodestar amount.  See Hensley, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.").

2. Vagueness of Entries

Where a prevailing party applies for attorney's fees pursuant to section 1988, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Id. at 437; see also Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." (citations omitted)).  The purpose of such documentation is to "enable a reviewing court to identify distinct claims." Hensley, 461 U.S. at 437.

Attorney Moukawsher has submitted documentation of his work with dated time entries specifying the number of hours and the nature of the work.  See Watrous Invoice at 1-16.  The Judgment defendants have marked seven time entries as vague, asking the court to exclude these.  See Defs.' Opp'n at 6-8.  In particular, the Judgment defendants identify a series of five entries from May 17, 2010 through May 27, 2010 in which counsel's descriptions (for instance, "Draft brief of plaintiff" or "Preparation of exhibits") lack a specific topic.  See id. at 7; Defs.' Ex. C (Doc. No. 181-3) at 1.  In addition, they identify two other entries—from January 15, 2011 and May 26, 2013—that lack a description altogether or describe work which is plainly inapt to the given posture of the case at the time.  See Defs.' Opp'n at 8; Defs.' Ex. C at 5, 16.

As to the brief and exhibits from May 2010, these are clearly directed at the preliminary injunction hearing on June 10, 2010. Not only has Attorney Moukawsher represented this to be the case, see Pl.'s Reply (Doc. No. 184) at 4; the Judgment defendants also marked these entries as subject to exclusion on the alternative basis that Watrous's Motion for Preliminary Injunction was unsuccessful, see Defs.' Ex. C. at 1. While, in general, time entries for legal research and the drafting of legal memoranda should specify the subject matter addressed, the court's review of these entries is not hampered by their apparent lack of specific subject matter. The court reviewed the brief in question, which addressed a single issue—whether the Town of Preston Inland Wetlands Commission lacked jurisdiction over the Property. See Br. of Pl. (Doc. No. 15). Furthermore, the amount of time spent by counsel on this brief (4 hours) was reasonable. Admittedly, exhibit preparation may include work of a non-legal or paralegal character, in addition to legal work, and exclusion or a reduced rate may be warranted for that separate reason. See infra Section II.C.3. However, the court declines to exclude entries for vagueness, where the context makes clear for what purpose time was spent, and where the time spent was not excessive.

As to the two discrete entries from January 15, 2011 and May 26, 2013, Watrous concedes that these entries were erroneously included and should be disallowed. See Pl.'s Reply at 4. Hence, the lodestar amount will be reduced by $1,225, for an adjusted lodestar amount of $212,987.67.

   3. Non-Legal Work

Work performed by non-lawyers, such as paralegals, is entitled to compensation at market rates in a fee application pursuant to section 1988. See Missouri v. Jenkins, 491 U.S. 274, 288 (1989); U.S. Football League v. Nat'l Football League, 887 F.2d 408,

11

416 (2d Cir. 1989). As the Jenkins Court explained, were that work not compensable in a Rule 54(d)(2)(B) motion, more tasks falling within the gray area of what can be done by either a lawyer or a paralegal would end up being done by lawyers and billed at their higher rates, "thus increasing the cost of litigation." 491 U.S. at 288 n.10. "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." Id. While counsel may perform a variety of non-legal or paralegal tasks where no other help is available, the value of such work "is not enhanced just because a lawyer does it." Id.

The Judgment defendants have marked several entries that contain clerical work, requesting that these be excluded. See Defs.' Opp'n at 8-9; Defs.' Ex. C at 1-2, 7, 8, 12-13, 15. Many of these entries combine legal and non-legal work, and the portion of time spent on non-legal work may well be small.[3] Nevertheless, it is not possible on the face of such entries to apportion the time spent to each listed activity.

As a solo practitioner, Attorney Moukawsher is doubtless obliged to perform many tasks in prosecuting a case which, in a firm, would be handled by lawyers and non-lawyers billing at different rates. That counsel did all work in this case himself does not make that work uniformly worth the hourly rate a lawyer may charge for legal work. In recognition both of that fact and of the difficulty of apportioning entries or engaging in line-by-line rate adjustments, and after review of the time records for tasks that could

---

[3] For example, the entry for 2.7 hours, on July 5, 2011, reads: "Preparation of response to fourth discovery request from town; conference client; review by plaintiff; photocopying signing and transmission by fax and mail." Pl.'s Ex. at 7. The Judgment defendants have bracketed only the last part as objectionable. See Defs.' Ex. C at 7.

have been handled by a non-lawyer, the court reduces the adjusted lodestar amount of $212,987.67 by five percent (5%), or $10,649.38,[4] for a final total of $202,338.29.

## III. CONCLUSION

For the reasons set forth above, the court **GRANTS** plaintiff's Motion for Attorney's Fees (Doc. No. 174), in the reduced amount of $202,338.29.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of February, 2014.

                                                /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge

---

[4] Had the court excluded all entries in their entirety that the Judgment defendants marked as partly clerical, the reduction would have been $7,945.  A 5% blanket reduction yields a larger net reduction.  However, the court has opted for the latter method on the view that it better captures the variety of non-legal, paralegal, and legal work performed throughout the litigation but billed at a single rate appropriate to an attorney doing strictly legal work.